No. 12336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

MARY M. FLETCHER,

Plaintiff,

-vs-

THE CITY OF HELENA, MONTANA, a
Municipal Corporation,

Defendant,

-------------------------------------------

THE CITY OF HELENA, MONTANA, a
Municipal Corporation,

Third-Party Plaintiff and Appellant,

-vs-

THE MONTANA POWER COMPANY, a
Municipal Corporation,

Third-Part Defendant and Respondent.

---

Appeal from:   District Court of the First Judicial District,
               Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellants:

        C. W. Leaphart, Jr., Helena, Montana
        Keller, Reynolds & Drake, Helena, Montana
        Paul F. Reynolds argued, Helena, Montana

    For Respondents:

        Gough, Booth, Shanahan and Johnson, Helena, Montana
        Ronald F. Waterman, argued, Helena, Montana

---

Submitted:  October 1, 1973

Filed: DEC 20 1973                    Decided: DEC 20 1973

*Thomas J. Kearney*
                                            Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Third party plaintiff and appellant the City of Helena, a municipal corporation, brings this appeal from a summary judgment entered in the district court of Lewis and Clark County in favor of third party defendant and respondent, the Montana Power Company, a Montana corporation, ordering that the City recover nothing from the Power Company by way of indemnity.

The original complaint underlying this cause was filed on June 23, 1971, by Mary M. Fletcher, plaintiff, against the City of Helena, defendant. The City subsequently filed an answer and third party complaint against the Montana Power Company as third party defendant. Thereafter the Power Company filed an answer, and both the City and the Power Company filed motions for summary judgment. Both motions were denied.

On February 22, 1972, plaintiff Mary M. Fletcher moved the separation of the trial of Fletcher v. City of Helena from the trial of City of Helena v. Montana Power Company. The district court granted her motion and, after trial by jury, a judgment in the amount of $25,000, plus costs, was entered in favor of Mary M. Fletcher against the City of Helena.

The City then filed and was granted a motion to amend its third party complaint against the Power Company. Thereafter both the City and the Power Company again filed motions for summary judgment. Hearing was held on both motions and on June 19, 1972, the district court granted summary judgment in favor of the Power Company ordering the City recover nothing by way of indemnity. From that order and judgment the City appeals.

The facts giving rise to this cause of action, as they appear from the record on appeal, are:

On January 18, 1971, in connection with the City's Urban Renewal program Mary M. Fletcher was relocated from her former residence to basement apartment #1, at 16 1/2 South Park Street, owned by the City of Helena.

- 2 -

On or about January 18, 1971, Lou Everett and Ed Kitts, employees of the City's Urban Renewal department, were on the premises of 16 1/2 South Park and entered the basement area of apartment #1. They noticed an unusual odor and observed gray ash and yellow flame in the sidearm heater used to heat apartment #1. It appears that Everett telephoned a request to the Power Company to check the heater. City personnel did not notify tenants of the defect, nor follow up on the service request, nor reinspect the heater prior to January 25, 1971.

Mrs. Fletcher testified by deposition: that shortly after she moved into apartment #1 she made a call complaining of lack of heat; that she believed she called the Power Company rather than the City, but was uncertain of this fact and of the date; that after the Power Company service man came to "check the heat", she was warm and comfortable and noticed no gas fumes or other peculiar odors in her apartment.

John Larson, a serviceman for the Power Company, testified by deposition that he performed one service call to 16 1/2 South Park on January 19, 1971, at approximately 11:30 a.m. There is a conflict between the litigants as to whether the service call was made on January 19 or 20, and whether it was in response to the request of Mrs. Fletcher or Mr. Everett, or both. The conflict is immaterial to the issue on appeal. Larson stated he inquired at apartment #1 and was told by an elderly lady that there was not enough heat. He then found the sidearm heater, and in his words:

> "Well, I opened the heater door to see what the problem was. The flame was blue but it wasn't as true a blue as I like to see. The burner itself had some white ash -- I guess you'd say -- small white ash on some of the coils and on the burner, which accumulates over a period of time from natural gas. It's common. I removed the burner -- I shut the gas off and removed the burner and cleaned the ports out and I turned the aquastat up. I couldn't see how many degrees or anything. It was unlegible. And then after I replaced the burner, I lit it, adjusted the flame, brought a wire up inside the venturi to make sure everything was clean, and it looked good. So I closed the door and I held a match toward the top of the heater

around the burner. We do that to check to see if
the chimney is drawing and the match remained lighted.
It didn't go out. Then I felt around it with my
hands and there was no appearance of any blockage at
all so then I left."

Larson stated he could smell no odor of burned or un-
burned gas in the area. Larson had no further contact with this
sidearm heater prior to January 25, 1971, nor did anyone else
from the Power Company.

On January 25, 1971, Mary M. Fletcher and two persons not
parties to the basic action were found in her apartment overcome
by fumes from a natural gas operated sidearm heater in the basement
of the apartment building. Mary Fletcher survived; the two other
persons did not.

Subsequent to the accident on January 25, 1971, the City
procured two "expert" inspections of the sidearm heater. Val
Ketchum, an employee of a Helena firm which installs and repairs
gas appliances, testified he found the vent pipe from the heater
ran horizontally approximately 13 1/2 feet and was concealed in
the floor. He stated this violated accepted installation practices,
which he said would permit a maximum lateral vent of two feet,
for this particular installation. His inspection revealed the
flue pipe was "ninety per cent or better plugged", and the
accumulation or blockage had been building up for an extended
period of time. He stated flue blockage would cause a back draft,
sending the products of combustion back into the furnace room
and that an open flue with a proper draft would take the products
of combustion out through the chimney, even if the heater were
improperly adjusted or malfunctioning.

The expert testimony of John Knicely, a chemical engineer,
generally concurred with the findings and opinions of Val Ketchum.
Knicely testified: that the heater burner was improperly adjusted,
giving off one thousand parts per million carbon monoxide; that
the vent flue from the heater ran horizontally about 11 feet more than
safety permitted; and that flue blockage had taken place over a long

- 4 -

period of time, which prevented the carbon monoxide from escaping into the atomosphere.

On appeal the sole issue presented is whether the district court erred in granting summary judgment in favor of the Power Company ordering the City recover nothing by way of indemnity.

A definitive statement of the law of indemnity appears in the District Court opinion by the Hon. William J. Jameson in Great Northern Railway Company v. United States, D. Mont. 1960, 187 F. Supp. 690,693,694:

> "In the absence of any Montana cases in point, I assume that the Montana court will follow the common-law rule that joint tortfeasors are not entitled to contribution from each other. 'In the absence of legislation, courts exercising a common-law jurisdiction have generally held that they cannot on their own initiative create an enforceable right of contribution as between tortfeasors.' Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp. 1952, 342 U.S. 282, 72 S.Ct. 277, 279, 96 L.Ed. 318. The common law rule was followed by the California Court in Forsythe v. Los Angeles Railway Co., 1906, 149 Cal. 572, 87 P. 24. If the parties here were in pari delicto, there is no right of recovery on the part of the plaintiff."

Footnote 7 following the above quoted paragraph in that case states:

> "This rule is stated in Restatement, Restitution § 102: 'Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other.'" [See also 42 C.J.S. Indemnity §27, p. 605]

Judge Jameson then went on to say:

> "The rule permitting indemnity against the 'principal offender' has been recognized in a variety of circumstances, and varied terminology has been used in describing the nature of the relationship of the respective parties. This is well expressed in United States v. Savage Truck Line, Inc., 4 Cir., 1953, 209 F.2d 442,446, 44 A.L.R.2d 984, where the court said: 'In the infinite variety of circumstances where indemnity has been sought the courts have used various terms to distinguish between the grade of fault attributable to the participating wrongdoers so as to justify the imposition of the entire loss on the one who is regarded as the principal offender. The acts of the parties are variously contrasted as positive or negative * * * and as active and passive * * * or as primary and secondary * * *; and sometimes one

party is said to have been merely constructively
liable and therefore entitled to indemnity from
the actual wrongdoer * * * Whatever the terminology,
the inquiry is always whether the difference in the
gravity of the faults of the participants is so
great as to throw the whole loss upon one. In such
event there is contribution in the extreme form of
indemnity.'"

The City contends that there was evidence before the
district court upon which a jury might well base a factual deter-
mination that the Power Company was negligent in its performance
of its service call on the sidearm heater. This point is not well
taken. As was stated in In re Standard Oil Company of California,
N.D. Cal. 1971, 325 F.Supp. 388, 391:

"The universal rule is that, when two or more
contribute by their wrongdoing to the injury of
another, the injured party may recover from all
of them in a joint action or he may pursue any
one of them and recover from him, in which case
the latter is not entitled to indemnity from
those who, with him, caused the injury. Fidelity
& Casualty Co. of N.Y. v. J. A. Jones Const. Co.,
325 F.2d 605, 611 (8th Cir. 1963)."

Therefore the issue before us is not whether the Power
Company was negligent; but whether or not the City was negligent
and, if so, whether or not the negligence of the City did as a
matter of law constitute active negligence.

Section 42-201, R.C.M. 1947, provides that a lessor of a
building for human occupation must "put it into a condition fit
for such occupation, and repair all subsequent dilapidations * * *"
to so maintain it. The municipal code of the City provides in
section 4-5-2 et seq. that the city engineer is a gas inspector
empowered to inspect all gas equipment; that all gas consuming
appliances must be properly vented to a suitable flue; and, that
upon discovery of a dangerous condition the gas must be ordered
turned off until the consumer corrects the dangerous condition.

We hold the district court upon the undisputed facts before
it made the only determination possible. Perhaps the term "active
negligence" is confusing in the instant case because the City's
active negligence is predicated on acts of omission. A concise
statement of the law applicable in an analogous indemnity situation

- 6 -

is found in Bush Terminal Bldgs. Co. v. Luckenbach Steamship Company, 9 N.Y.2d 426, 174 N.E.2d 516, 517:

"The culpability of the person seeking indemnity determines whether recovery will be allowed against a joint tortfeasor. A right to implied indemnity does not exist if a defendant's conduct was active. [Citing cases]

"Acts of omission constitute active negligence as well as acts of commission [Citing cases] and where defendant is alleged to have participated in or 'concurred in the wrong which caused the damages' there is no right to recovery over [Citing case]. Moreover, where there is a charge of notice, a failure to perform the duty to inspect may not be deemed mere passive negligence."

Here, the City, after actual notice of a defect in the sidearm heater, took no steps: to ascertain what defects existed; to inform the Power Company of the nature of the defects it was aware of; to warn the tenants of the dangerous condition; or even, to follow-up in determining whether or when a service call had been made.

The testimony of the City's expert witnesses Knicely and Ketchum established that "but for" the blocked flue the asphyxiation would not have occurred. There was no evidence before the district court to contradict or refute this testimony. This was sufficient to establish proximate causation as a matter of law. DeVerniero v. Eby, ____Mont.____ ____, 496 P.2d 290, 29 St.Rep. 273.

The City's contention that proximate causation was a disputed fact not proper for summary judgment is without merit. 65 C.J.S. Negligence § 110, provides:

"The negligence of the defendant need not be the sole cause of the injury, it being sufficient that it was one of the efficient causes thereof, without which the injury would not have resulted; but it must appear that the negligence of the person sought to be charged was responsible for at least one of the causes resulting in the injury. * * *

"It is generally considered that there may be more than one proximate cause of an accident or injury, that each of the concurrent efficient causes contributing directly to the accident or injury is a proximate cause thereof, and that the existence of one proximate cause of an accident or injury does not excuse another proximate cause. There is, however, some authority rejecting the

theory that there may be two or more proximate causes of an injury and holding that there can be but one proximate cause. In any event, two or more separate and distinct acts of negligence operating concurrently may constitute the proximate cause of an injury."

The second paragraph of the above quotation amounts to a distinction without a difference since under either theory liability results. 65 C.J.S. Negligence § 111(1), provides:

"An intervening cause which breaks the chain of causation from the original negligent act or omission will be regarded as the proximate cause relieving the original wrongdoer of liability; but the mere fact that other forces have intervened between the defendant's negligence and the plaintiff's injury does not absolve the defendant where the injury was the natural and probable consequence of the original wrong and might reasonably have been foreseen.

"* * *

"No negligence is insulated as long as it plays a substantial and proximate part in the injury. If the original act is wrongful and would naturally, according to the ordinary course of events, prove injurious to others, and does result in injury through the intervention of other causes not wrongful, the injury will be referred to as the wrongful cause, passing through those which were innocent. Moreover, a wrongdoer may not rid himself of responsibility for injury his own fault was enough to cause merely by suggesting a possibility that the fault of someone else might have intervened. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury."

In point of fact, the considerations determining active versus passive negligence are analogous and interrelated to those considerations which are determinative of the existence of intervening superseding cause. 2 Restatement of Torts 2d, §§ 440-443. Indemnification requires the would be indemnitee be free from any active negligence contributing to the injury causing accident. Smith v. Pennsylvania-Reading Seashore Lines, 355 F.Supp. 1176.

In the instant case, on the undisputed facts before the district court, reasonable minds could not differ on the fact the City was actively negligent and that active negligence contributed directly and proximately to the accident causing Mary Fletcher's injury.

- 8 -

The judgment and order of the district court are affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
Justices

_____
Hon. Paul G. Hatfield, District
Judge, sitting for Justice John
Conway Harrison.

- 9 -