No. 13861

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

RUTH ROGERS,
                        Plaintiff and Respondent,
    -vs-
WESTERN AIRLINE, a Corporation,
                        Defendant and Appellant,
        and
WESTERN AIRLINE a Corporation,
                        Third-Party Plaintiff,
    -vs-
CITY OF GREAT FALLS, MONTANA, a
Municipal Corporation,
                        Third-Party Defendant.

Appeal from:   District Court ofthe Eighth Judicial District,
               Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Church, Harris, Johnson & Williams, Great Falls,
         Montana
        Cresap S. McCracken argued, Great Falls, Montana

    For Respondent:

        Smith, Emmons, Baillie & Walsh, Great Falls, Montana
        Robert Emmons argued, Great Falls, Montana
        Marra, Wenz, Iwen and Johnson, Great Falls, Montana

                            Submitted:  June 15, 1979

                            Decided:  NOV 8 1979

Filed: NOV 8 1979

Thomas J. Kearney
                                                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In the above-captioned causes, Northwest Airlines and Western Airlines each appeal from the separate summary judgments entered against them in favor of the City of Great Falls in the District Court, Eighth Judicial District, Cascade County. Since the cases involve common legal questions, they were consolidated on appeal to this Court.

In the Western Airlines case, Ruth M. Rogers, a Los Angeles resident, had traveled to Montana for a Christmas vacation visit with her family at the town of Lothair. On January 4, 1972, she came to the Great Falls/to board a
airport
Western Airlines flight for her return to Los Angeles. Generally wintry conditions had prevailed for several days, leaving the outside terminal area at the airport in a snowy and icy condition. To board her airplane, Mrs. Rogers had to walk from the terminal building at the airport to the waiting aircraft. As she reached the airplane and attempted to step on the stairway leading into the craft, her foot, still on the airport ramp or apron, slipped, causing her to lurch and strike her right foot on some part of the airplane stairway. She caught herself before falling completely. She then went into the airplane and flew therein to Los Angeles. Later, it appears that her right foot was amputated above her ankle. She filed suit in the Cascade County District Court against Western Airlines and the City of Great Falls based on her claim that the slip and resulting impact to her right foot caused the ultimate injuries.

-2-

Western filed its answer including several affirmative defenses as to contributory negligence and assumption of risk. Its answer also included a third-party complaint against the City of Great Falls, Montana, claiming the right to indemnity from the City for all costs, attorney fees and expenses incurred in connection with the Rogers claim. Great Falls filed its answer to the third-party complaint, setting out several defenses to any liability for indemnity to Western.

Thereafter, Great Falls moved for summary judgment in its favor against Western.

On May 2, 1977, District Judge Joel G. Roth granted summary judgment in favor of Great Falls and against Western on the third-party claim, upon the basis that former section 1-502, R.C.M. 1947, controlled. We shall discuss the statute hereunder.

In cause No. 14027, it appears that Anne Buscher had returned to her Great Falls home on a Northwest Airlines airplane on March 25, 1972. She debarked from the plane at the Great Falls airport, and on walking to the terminal, slipped and fell on the apron or ramp where there were conditions of snow and ice. She and her husband Walter J. Buscher filed a complaint against Northwest Airlines and the City of Great Falls, she alleging permanent injuries and damages from her fall, and the husband alleging loss of consortium.

Northwest filed its answer against plaintiffs' claim; the City of Great Falls filed its answer and included a cross-claim against Northwest Airlines for indemnity. Northwest answered the cross-claim of the City of Great Falls and in return, cross-claimed against the City of Great Falls for indemnity. Thereafter, the City of Great Falls

-3-

moved for summary judgment against the plaintiffs' claim.

Judge Truman G. Bradford on January 20, 1977, entered summary

judgment in favor of the City of Great Falls and against the

plaintiffs Anne Buscher and Walter J. Buscher. On August 26,

1977, the City of Great Falls further moved for summary judgment

against Northwest Airlines on its cross-claim for indemnity.

On September 21, 1977, Judge Bradford granted summary judgment

in favor of the City of Great Falls and against Northwest

Airlines on its cross-claim. Again, the District Court

decided that former section 1-502, R.C.M. 1947, controlled.

Subsequent to the entry of summary judgment in favor of

the City of Great Falls, Northwest settled and compromised the

Buscher claim against it for the sum of $25,000.

It is from the summary judgments against the airlines

that each respectively appeals in this case.

What we say hereafter applies equally to each airline,

unless the airline is specifically designated.

Great Falls International Airport, including its terminal

and airport facilities, is operated by the City of Great

Falls. At each pertinent time there was in effect between

the City and each airline an agreement relating to the use

of the airport facilities, of which the following are the

relevant parts for these cases:

> "This Agreement is made, effective January
> 1, 1971, between the City of Great Falls,
> Montana (City), acting through its duly
> appointed and acting Great Falls Airport
> Commission (Commission), and [airline]
> with reference to the Great Falls International
> Airport (Airport), described on Exhibit A
> attached hereto.
>
> "SUBJECT MATTER. (A) Use of Airport. The
> City licenses [airline] (i) to use, in common
> with others authorized so to do, all runways,
> taxiways and aprons which are or may hereafter
> be provided at the Airport, and (ii) to use
> all other facilities, improvements, equipment
> and services which are or may hereafter be
> provided at the Airport, except those under
> lease to another.. . ."

-4-

"(C) Public Space in Administration Building. The City licenses [airline], its employees and invitees, to use, in common with others and solely in connection with [airline's] air transportation business, all public space and facilities in and adjacent to the Administration Building, as designated on Exhibit B attached hereto. Such space and facilities will be adequate for reasonably uncongested and unobstructed use by [airline's] employees and invitees.

". . .

"(E) Right of Access. The City will permit full and unrestricted access by [airline], its employees and invitees, without charge, to and from the Airport and the premises and facilities referred to in Paragraphs 1(A), 1(B), 1(C), 1(G) and 1(F) (including direct access between the Administration Building and [airline's] aircraft parked upon the adjacent apron) for all purposes contemplated by this agreement.

". . .

"4. MAINTENANCE AND OPERATION OF AIRPORT. (A) The City will properly maintain and operate the Airport (including all buildings and facilities thereon) for the safe convenient and proper use thereof by [airline], and in accordance with all rules and regulations of any competent government authority.

". . .

"12. INDEMNITY. [Airline] will indemnify and hold the City harmless from any loss, liability or expense for injury to or death of any person or damage to or destruction of any property caused by [airline's] negligent use or occupancy of the Airport, except a loss, liability or expense caused by the negligence of the City, its agents or employees. The City will give [airline], and [airline] will have the right to compromise and defend same to the extent of its own interest." (Emphasis added.)

The airlines raised the following contentions:

1. The indemnity provision of the airport agreement, which runs to the City of Great Falls, creates an implied right of indemnity in favor of the airlines against Great Falls.

2. The sovereign immunity provisions of former section 1-502, R.C.M. 1947, do not operate against an implied right of indemnity.

3. The subsequent repeal of section 1-502, R.C.M. 1947, removes any claim of right of sovereign immunity in the City of Great Falls from claims of indemnity.

These cases come hard on the heels of our opinion in cause no. 14676, Consolidated Freightways Corporation of Delaware v. June Osier and Margaret Collins, decided October 12, 1979, 36 St.Rep. 1810. In that case, we held that in Montana there is no substantive right of contribution between joint tortfeasors except in comparative negligence cases, and no substantive right to indemnity, except for those cases exemplified by Crosby v. Billings Deaconess Hospital (1967), 149 Mont. 314, 426 P.2d 217, and Great Northern Railway Company v. United States (D. Mont., 1960), 187 F.Supp. 690, where the alleged tortfeasors are not in pari delicto.

Both of the cases involved here were filed before the comparative negligence statute, section 27-1-702 MCA, came into effect. Under Dunham v. Southside National Bank of Missoula (1976), 169 Mont. 466, 548 P.2d 1383, the statute does not have a retroactive effect.

The first paragraph of section 1-502, R.C.M. 1947, which figured so prominently in the decisions of the District Courts to grant summary judgments, provides for the acquisition and operation of airports by municipal corporations as "public and governmental functions." The second paragraph of that statute, on the dates of these incidents and injuries, provided that no action or suit sounding in tort could be brought against the state or a municipal corporation arising out of the operation and maintenance of airport facilities.

As can be seen from the issues framed by the airlines, it is their theory that the agreements between the city and the airlines gave rise to an implied, not express, contract of indemnity for any injuries sustained by airline passengers that could be ascribed to the failure of the City to maintain the airport "for the safe, convenient and proper use thereof." The airlines further contend that the implied right to indemnity

is contractual, and is not barred by the immunity statute, section 1-502, R.C.M. 1947, which is limited to actions "sounding in tort."

It is not necessary for us to examine in detail these contentions of the parties. We find and hold that the District Courts in each case reached the correct result, whether or not they properly construed the effect of the immunity statute.

It is the intrinsic nature of the legal right to indemnity that brings us to this result. In Consolidated Freightways v. Osier and Collins, supra, we stated that indemnity "shifts the entire loss from one party compelled to bear it to the shoulders of another who should bear it instead." (Emphasis added.) A party claiming a right to indemnity must be able to show that its liability to a third party arises only because of the relationship between the first party indemnitee and the second party indemnitor, Crosby v. Billings Deaconess Hospital (1967), 149 Mont. 314, 426 P.2d 217, and not due to any negligence on the part of the first party claiming indemnity. See Fletcher v. City of Helena (1973), 163 Mont. 337, 517 P.2d 365. The airlines necessarily fail this test in these cases.

To demonstrate this result fully, we must refer to the original complaints against airlines in each case. In Rogers v. Western Airlines, the plaintiff claims that the airline was negligent in "carelessly [maintaining] its airport premises and [failing] to warn plaintiff of the dangerous and defective condition." In Buscher v. Northwest Airlines, it is averred that "Plaintiff slipped on the hazardous surface as it then existed due to the negligence, fault and want of due care" of the airline. It is plain that in each case, the plaintiffs can be successful against airlines only if plaintiffs establish

-7-

active negligence proximately causing the respective plaintiffs' injuries. If such active negligence is established against the airlines, then airlines have no right to claim indemnity against another claimed joint tortfeasor such as the City. On the other hand, if plaintiffs fail to establish such negligence of airlines as a proximate cause, then airlines have no liability to plaintiffs and no claim for indemnity arises against the City. In either case, the result is the same: no indemnity liability to the airlines on the part of the City. Judge William J. Jameson, United States District Judge, was particularly cognizant of this no-win situation in Panasuk v. Seaton (D. Mont. 1968), 277 F.Supp. 979, 985, where he noted:

> ". . . The plaintiff in this action in order
> to recover from the defendants must of course
> prove that the defendants were negligent and
> that their negligence was a proximate cause of
> plaintiff's injury. If this is not established,
> there is no liability, and no question of possible
> indemnity could arise. It is my conclusion that
> this is not a case where the principles of indemnity
> are applicable." Panasuk v. Seaton (1968), 277
> F.Supp. 979, 985.

Of special significance in considering what might result in each case here where both the city and the airline are defendants is the disparity of the duty of care that exists between plaintiffs and the airlines, in contrast to the duty that exists between the plaintiffs and the City. Because the airlines are air common carriers, they owe a high degree of care (some courts say the highest degree of care) to the safe passage of their passengers. This standard of care extends to passengers embarking and debarking and while they are passing back and forth to and from the terminal. 2A C.J.S./Aeronautics and Aerospace, §255. The duty of the City to such passengers is expressed as the exercise of ordinary care under the circumstances to an invitee. See, Tigh v. College Park Realty Co. (1967), 149 Mont. 358, 365, 427 P.2d

57.  Indeed, it may well be that the City has no liability for accumulations of snow and ice, see Luebeck v. Safeway Stores, Inc., (1968), 152 Mont. 88, 93, 446 P.2d 921.

It cannot be said that the airport agreements between the City and the respective airlines operated to shift their burden of high degree of care from the airlines to the City. This would be carrying the doctrine of implied contractual indemnity beyond the perimeters of any cases we have found.

Because of our view of the cases, and their proper result, it is not necessary to discuss the other contentions of the parties.  The summary judgment in each case is affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____
        Justices

Mr. Chief Justice Frank I. Haswell, specially concurring.

I concur in the result reached by the majority but not all that is said therein.

_____
        Chief Justice