No. 80-306

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA, acting by and through the
Department of Highways of the State,

                    Plaintiff and Respondent,

        vs.

THE CITY OF HELENA,

                    Defendant and Appellant.

---

Appeal from:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark.
               Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

        For Appellant:

            Hull and Sherlock, Helena, Montana
            Jeffrey M. Sherlock argued, Helena, Montana

        For Respondent:

            Beate Galda argued, Helena, Montana

---

                        Submitted:  June 17, 1981

                          Decided:  August 11, 1981

Filed:  AUG 11 1981

_Thomas J. Kearney_
                              Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant City of Helena appeals from a declaratory judgment entered June 19, 1980, in the District Court of the First Judicial District. The judgment ordered the City to pay 25 percent of costs incurred in the relocation of certain utility facilities owned by the City.

On August 9, 1974, Helena's Broadway Avenue between Montana and Warren Streets was approved to become part of the Federal Aid Urban System. With such designation, jurisdiction over Broadway Avenue was transferred from the City to the Montana Highway Department. Construction of the project was completed on May 15, 1979.

A necessary part of the project was the relocation of certain facilities owned by the City and used in its water, sewer and light systems. On May 16, 1977, the City and the Montana Highway Department entered into an agreement concerning the relocation of those facilities. The parties agreed that the relocation of the facilities was necessary and in the public interest, and the City granted the State the authority to adjust, replace, repair and relocate the facilities. In the document both parties indicated they could not agree on the proper allocation of relocation costs; however, they did not wish the dispute to interfere with the construction project. Therefore, the parties agreed to allow the Montana Highway Department to proceed with the project and to litigate the cost dispute. The cost of relocation relevant to this action amounted to $14,572.80. On June 19, 1980, the District Court issued its order requiring the City of Helena to pay 25 percent of the relocation costs, equivalent to $3,643.20.

The following issues are raised by the City of Helena on appeal:

-2-

1. whether the City of Helena is required by section 60-4-403, MCA, to pay 25 percent of the utility relocation costs incurred as a result of the Broadway Avenue project;

2. whether the necessary relocation of municipally-owned utility systems is a taking of private property requiring just compensation;

3. whether the doctrine of local self-government prevents the application of section 60-4-403, MCA, to Montana's cities; and

4. whether requiring municipally-owned utility systems to pay 25 percent of relocation costs imposes an unlawful tax or debt upon municipal residents.

The City contends that section 60-4-403, MCA, is inapposite and that the City is entitled to be paid just compensation because the State has exercised its eminent domain power. The City would have the State pay as just compensation the entire relocation cost. The State is willing to be responsible for 75 percent of the cost as provided for in the statute.

The District Court concluded that the City of Helena was required by section 60-4-403, MCA, to pay 25 percent of the costs incurred in the relocation of the utility facilities on Broadway Avenue. Sections 60-4-401 et seq., MCA, provide for the relocation of utility facilities on any of the Federal Aid Urban System projects. The statute provides that 75 percent of all costs of relocation are to be paid by the State Highway Department. The statute expressly applies to both publicly and privately owned utilities. A city acting in its proprietary capacity as an operator of water, sewer and lighting facilities is a public utility. Section 69-3-101, MCA; Leischner v. Knight (1959), 135 Mont. 109, 337 P.2d 359.

The City contends that the relocation statute, sections 60-4-401 et seq., MCA, does not apply to this case because the City had jurisdiction of the street when the utilities were originally installed. The City relies on Jones v. Burns (1960), 138 Mont. 268, 357 P.2d 22, and construes Jones to hold that sections 60-4-401 et seq., MCA, control only when the utilities were initially installed pursuant to section 69-4-101, MCA. Therefore, the City argues that since it did not need the State's permission to locate its facilities on Broadway, section 60-4-403, MCA, does not apply. However, Jones does not stand for the proposition that the two statutes are interrelated in the manner suggested by the City. In Jones, the predecessor to sections 60-4-401 et seq., MCA, was attacked on numerous constitutional grounds. It was argued that the relocation statute would transform a bare permissive use of public roads by utility companies into a vested property right. Section 69-4-101, MCA, was cited to illustrate that the telephone and telegraph companies involved in the litigation did not have a vested property right, but rather a mere permission from the state to locate facilities on the public ways. This Court found that the relocation statute did not give the utility companies a vested property right to place facilities in the public way, but rather the statute merely recognized an equitable right in the utility companies to be protected against any loss they might suffer as a result of the state's exercise of its police power.

The state has ownership and control of all city streets in Montana, and if the state chooses to delegate authority to the city to control its streets, the city becomes a trustee thereof. Palffy v. Director of Finance of City of Bozeman (1975), 168 Mont. 108, 540 P.2d 955; State v. State Water Conservation Board (1958), 134 Mont. 403, 332 P.2d 913; City of Billings v. Herold (1956), 130 Mont. 138, 296 P.2d 263; Bidlingmeyer v. City of

-4-

Deer Lodge (1954), 128 Mont. 292, 274 P.2d 821. The state may also revoke the jurisdiction given to the city to control and maintain the city streets. Bidlingmeyer, supra. The City of Helena, exercising the jurisdiction delegated to it by the State, granted itself a franchise to use the streets for location of utilities controlled by the City in its proprietary capacity. When operating in a proprietary capacity, a city is subject to the same burdens, responsibilities and liabilities as a private business and is entitled to the same rights, privileges and immunities. State v. Holmes (1935), 100 Mont. 256, 47 P.2d 624. When the jurisdiction of Broadway Avenue was transferred from the City of Helena to the Montana Highway Department, the nature of the City's rights as a public utility did not change. Under common law, any franchise granted to a public or private utility to use city streets is subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets. Jones v. Burns (1960), 138 Mont. 268, 357 P.2d 22; Connecticut Ry. & L. Co. v. New Britain Redev. Comm'n (1971), 161 Conn. 234, 287 A.2d 362; McQuillin, Municipal Corporations, §§ 34.72, 34.74(a), (1970 ed.). The fact that the governing body which requires the relocation was not the grantor of the franchise does not affect the power to require relocation, nor does it affect the applicability of sections 60-4-401 et seq., MCA.

It is the position of the City of Helena that the utility facilities were the private property of the City and that just compensation must be paid under Mont. Const., Art. II, Sec. 29, for the "taking" of the facilities. The District Court found that when the State requests the utility to move its facilities, there is no "taking" in the constitutional sense. There was no error in this conclusion.

While it is true that private property of a municipality cannot be taken without just compensation, City of Three Forks v. State Highway Commission (1971), 156 Mont. 392, 480 P.2d 826; and that the utility facilities are the private property of the municipality acting in its proprietary capacity, appellant's conclusion that forced relocation of the utilities requires just compensation does not follow.

If the state action is a proper exercise of the police power and is directly connected with matters of public health, safety and welfare, a reasonable burden may be imposed upon private property without compensation. Yellowstone Valley Electric Cooperative, Inc. v. Ostermiller (1980), ___Mont.___, ___P.2d ___, 37 St.Rep. 536. On the other hand, if the state action is an exercise of the eminent domain power whereby private property is taken for a public use, just compensation is required. See e.g. McTaggert v. Montana Power Co. (1979), ___Mont.___, ___P.2d ___, 36 St.Rep. 2079. The line of demarcation is not always clearly visible.

In McTaggert, the owner of agricultural land petitioned for relocation of a utility line pursuant to sections 69-4-401 et seq., MCA, alleging that he desired to install a new irrigation system and that the utility line which crossed his land interfered with the planned system. The statutes were found to constitute a taking of private property for public use under the eminent domain power rather than an exercise of the police power. Public health, safety and welfare were only indirectly concerned.

The Yellowstone Valley case involved a challenge to a statute which required utilities at their own expense to raise or remove their transmission lines to allow for the passage of oversized equipment and structures being moved on the public highways. Section 69-4-603, MCA. For several reasons the

statute was found to be a regulation enacted within the police power of the state. Public safety was promoted by the statute which was intended to prevent electrical accidents. Second, a public benefit was conferred with minimal interference with the private rights of the utilities. And most significantly, there was no appropriation of a property right because:

> "In locating their facilities upon a public right-of-way, utilities and cooperatives are conferred a property right which, by its very nature, is subject to other competing franchises and privileges. The easement which is obtained is not an absolute property right; there is no right conferred upon utilities to have their facilities occupy a particular location." Yellowstone Valley Elec. Coop., Inc. v. Ostermiller, supra, 37 St.Rep. 536, 540.

The McTaggert situation involved a greater property right, since the utility had an easement across private land which was disturbed by the application of the statute.

The City of Helena did not have an absolute right to locate its utility facilities in the street, but rather the right was subject to the State's exercise of its police power. Jones, supra. The benefit to the public as a whole outweighed the temporary deprivation and inconvenience suffered by the City. We find that the District Court correctly concluded that when the State required the City to relocate its utilities, there was no taking in the constitutional sense, but rather a legitimate use of the police power for which no compensation is required.

Finally, the City argues that the doctrine of local self-government prevents application of section 60-4-403, MCA, to Montana's cities, and that the statute unconstitutionally compels the City to incur a debt or impose taxes without its consent. We find no merit in these contentions. The legislature in enacting sections 60-4-401 et seq., MCA, sought to alleviate part of the burden imposed upon utilities by the common law rule which required utilities to shoulder the entire

expense of relocation of facilities. <u>Jones</u>, supra. The statutes require the State to assume 75 percent of the cost of relocation necessitated by federally aided projects. Since the statute alleviates most of the burden previously imposed upon utilities, the City's argument that the legislature has imposed a tax or compelled the incurrence of a debt must fail. Nor is the right of home rule adversely affected by the statute. It is difficult to perceive how a statute alleviating a financial burden could constitute an impermissible meddling into purely local affairs.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices