DA 08-0564

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 414

STATE OF MONTANA,

      Appellant and Cross-Appellee,

  v.

BUTTE-SILVER BOW COUNTY,

      Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                      In and For the County of Butte/Silver Bow, Cause No. DV 07-132
                      Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michael R. King, Risk Management & Tort Defense, Helena, Montana
          Gary L. Walton, Attorney at Law, Butte, Montana

      For Appellee:

          Jack Jenks and Carey B. Schmidt, Phillips Law Firm, Missoula, Montana

                      Submitted on Briefs:  August 18, 2009

                                   Decided:  December 1, 2009

Filed:

                      _____
                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 The State of Montana (State) appeals from an order of the Second Judicial District Court, Butte-Silver Bow County, allocating damages for negligence in the trip and fall related death of Mina Comer (Comer). Butte-Silver Bow County (County) cross-appeals. We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the District Court properly deny the State's summary judgment motion that the County had the sole duty to maintain the sidewalk?*

¶4 *Did the District Court properly deny the State's summary judgment motion regarding common law indemnity?*

¶5 *Did the District Court properly place the State on the verdict form?*

¶6 *Did the District Court's trial orders and refusal to give the State's proposed jury instructions deprive the State of its fundamental right to a fair trial?*

¶7 *Did the District Court properly dismiss the State's cross-claim without a determination by the jury or the court as to the fact questions underlying the cross-claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Mina Comer tripped and fell on a sidewalk along Harrison Avenue in Butte on April 26, 2006. Comer died as a result of her injuries. Comer's estate sued Butte-Silver Bow County and the State, alleging that Comer's death had occurred as a result of negligent maintenance of the sidewalk.

2

¶9 Harrison Avenue is a state highway that bisects the flats of Butte from Front Street on the north to Basin Creek Road on the south. The State contracted with the County on two separate occasions in order to receive federal-aid highway funds for the reconstruction of Harrison Avenue. Federal law requires these contracts as prerequisites for the acquisition of federal funds for the construction, or reconstruction, of state highways.

¶10 The contracts lay out the respective duties of the State and the County with regard to the construction, regulation, and maintenance of state highways. A clause in both contracts stipulates that "[t]he City-County shall maintain or cause to be maintained the sidewalks bordering the project." Jimmy Johnston, former County Public Works Director, negotiated the two contracts. Johnston testified that during his tenure the County had repaired sidewalks subject to the terms of the contracts.

¶11 The sidewalk at the site of Comer's accident lies within the right-of-way for Harrison Avenue. Kevin Brewer, the Maintenance Chief of the Montana Department of Transportation's (Department) Butte District at the time of the accident, testified that the State never had maintained the sidewalks along Harrison Avenue. Brewer further testified that he never had asked anyone from the County to perform sidewalk maintenance along a state highway route, including Harrison Avenue. The State repaired the sidewalk following Comer's accident. Brewer did not bill the County for what he considered a "maintenance repair."

¶12 Marty Hanley, a former equipment operator for the Department, plowed snow

3

from the sidewalks along Harrison Avenue two or three times per winter. Hanley testified that on December 9, 2005, while plowing snow at the site where Comer fell, the blade of his grader had raised a corner of the sidewalk. Hanley used the blade to push the sidewalk back into place. Hanley did not break the slab, but he left approximately half an inch of the corner sticking up. Hanley informed his supervisor at the Department of what had happened. After hearing of Comer's accident, Hanley told the current Department supervisor "I know all about that [sidewalk]," to which his supervisor allegedly responded, "I don't want to hear about it."

¶13 The State filed two summary judgment motions before trial. The State first argued that the County had the sole duty to maintain the sidewalk, pursuant to the contracts, and thus bore sole liability for any finding of negligence with regard to Comer's accident. The State also sought summary judgment against the County on its common law indemnity claim. The District Court denied the State's motions on the grounds that "material questions of fact" remained both as to the respective maintenance duties of the State and the County, and as to causation.

¶14 The County, in turn, sought to exclude evidence of the State's cross-claim for indemnity and contribution. The District Court granted the County's motion with respect to indemnity on the grounds that the State sought common-law indemnity rather than contractual indemnity. The court reasoned that indemnity and contribution presented questions of law for the court to decide. The court emphasized, however, that the State remained free to present the evidence of its own and the County's negligence, the

contracts between the State and the County, and the County's alleged breach of those contracts.

¶15 The District Court conducted a jury trial in Butte during the week of August 25, 2008. The court declined to give the State's proposed Jury Instruction No. 33 on indemnity, and proposed Jury Instruction No. 35 on vicarious liability, again based on its conclusion that these issues presented questions of law for the court.

¶16 The jury returned a verdict in favor of Comer's estate. The verdict assessed damages totaling $581,383 to Comer's estate and her representatives individually. The jury apportioned fault at sixty-five percent to the State, thirty percent to the County, and five percent to Comer. The District Court dismissed the State's cross-claim for indemnity as being precluded by its own negligence in light of the jury's apportionment of fault.

## STANDARD OF REVIEW

¶17 We review *de novo* a district court's grant or denial of a motion for summary judgment. *Fenno v. Mountain West Bank*, 2008 MT 267, ¶ 9, 345 Mont. 161, 192 P.3d 224. We apply the same criteria used by the district court under M. R. Civ. P. 56. *Hogenson Const. v. Montana State Fund*, 2007 MT 267, ¶ 11, 339 Mont. 389, 170 P.3d 471. We review for an abuse of discretion a district court's refusal to give a jury instruction. *Whidden v. Nerison, Inc.*, 1999 MT 110, ¶ 22, 294 Mont. 346, 981 P.2d 271.

## DISCUSSION

¶18 *Did the District Court properly deny the State's summary judgment motion that*

*Butte-Silver Bow had the sole duty to maintain the sidewalk?*

¶19 The State argues that the two federal-aid highway contracts transferred any legal duty that it may have had to the County. The State relies on the clause in both contracts providing that "[t]he City-County shall maintain or cause to be maintained the sidewalks bordering the project." The State contends that a governing body that contracts to maintain a public right-of-way remains solely responsible for the consequences of its failure to maintain.

¶20 The existence of a legal duty presents a question of law to be determined by the court. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601. Section 60-2-203, MCA, provides that "[t]he department shall maintain all public highways or portions of public highways that it maintained on July 1, 1976." Section 60-2-204, MCA, authorizes the Department to enter into an agreement with a local governing body to maintain portions of public highways. The statute contains the caveat, however, that the Department shall bear the entire cost of maintenance and construction work performed by the local government pursuant to such an agreement. Section 60-2-204, MCA.

¶21 This retention of financial responsibility reflects the concept that "[u]nder Montana law, the [S]tate, not the City, has 'ownership and control of all city streets,' with local governments as the trustees." *Montana-Dakota Utilities Co. v. City of Billings*, 2003 MT 332, ¶ 28, 318 Mont. 407, 80 P.3d 1247 (quoting *State v. City of Helena*, 193 Mont. 441, 444, 632 P.2d 332, 334 (1981)). Other jurisdictions similarly have held that

6

"a municipality is a mere agent of the state as it relates to the maintenance of public highways and other governmental functions." *Pullen v. State*, 707 A.2d 686, 691 (1998). This Court has held that a municipality has no authority to construct a sidewalk within a state highway right-of-way. *Palffy v. Bozeman*, 168 Mont. 108, 540 P.2d 955 (1975). The municipality, in turn, also lacks the authority to allocate the costs of such construction to the neighboring property owner. *Palffy*, 168 Mont. at 112, 540 P.2d at 957.

¶22    This Court addressed a similar situation in *State ex rel. City of Helena v. District Court*, 167 Mont. 157, 536 P.2d 1182 (1975). An injured person filed an action against the State following an accident at an intersection that was part of the state highway system and designated as a federal-aid project. The intersection was located within the city limits, was policed by the city, and the city had performed regular sanding and emergency services. The Court rejected the State's claim that the city had a duty to maintain the intersection.

¶23    The Court pointed to the fact that the construction agreement between the State and the city provided that the "[c]ity will not erect any traffic control devices giving preference to 'local routes' without the express written permission of the state." *State ex rel. City of Helena*, 167 Mont. at 160, 536 P.2d at 1184. The State retained ultimate control, and the corresponding responsibility, over the intersection. *State ex rel. City of Helena*, 167 Mont. at 160, 536 P.2d at 1184. The contracts at issue here contain an identical clause.

¶24 Federal law, in the form of 23 U.S.C. § 116(a), further bolsters the notion that the State bears ultimate responsibility as owner of the street and sidewalk under Montana law. Section 116(a) provides that "[i]t shall be the duty of the State transportation department to maintain, or cause to be maintained, any project constructed under the provisions of this chapter or constructed under the provisions of prior Acts." The State constructed Harrison Avenue under the provisions of the federal-aid statute. This statutorily imposed duty curtails the State's ability to abrogate its duty of care through a contract with the County. *State ex rel. City of Helena*, 167 Mont. at 162, 536 P.2d at 1185. The State's statutory duty of care to Comer existed independently of any duties delegated to the County through the construction contracts. *See Olson v. Shumaker Trucking & Excavating Contrs., Inc.*, 2008 MT 378, 374 Mont. 1, 196 P.3d 1265.

¶25 The fact that state and federal law imposes a nondelegable duty upon the State to maintain the sidewalks does not end our inquiry. Nothing in state or federal law precludes the State from entering into a contract with a third-party to perform the required maintenance work for the State. In fact, § 60-2-204, MCA, provides for such contracts. Such contracts do not remove, however, the nondelegable duty of care imposed by 23 U.S.C. § 116(a), and our case law interpreting § 60-2-204, MCA. These contracts simply allow the State to contract with local governments to perform routine maintenance work, while the State retains ultimate responsibility for the consequences of any breach. We recently faced an analogous situation under the Scaffolding Act, Title 50, Chapter 77, MCA.

¶26    The Scaffolding Act imposes a nondelegable duty to ensure workplace safety. *United Nat'l Ins. Co. v. St. Paul Marine Ins. Co.*, 2009 MT 269, ¶ 21, 352 Mont. 105, 214 P.3d 1260. In *United Nat'l Ins. Co.*, St. Paul, a contractor's insurer, sought a declaratory judgment against United, a subcontractor's insurer. *United Nat'l Ins. Co.*, ¶ 10. St. Paul sought a ruling that United contractually was obligated to reimburse St. Paul for the amount that St. Paul had paid to settle a claim against its insured – the contractor. The Scaffolding Act imposed a nondelegable duty on the contractor to provide a safe workplace. The contractor settled a claim brought by an injured worker in satisfaction of this nondelegable duty. The contract between the contractor and the subcontractor separately required the subcontractor to purchase and maintain commercial general liability insurance that listed the contractor as an additional insured. St. Paul paid the settlement of the claim brought by an injured worker after United rejected the tender of defense. *United Nat'l Ins. Co.*, ¶ 8.

¶27    United defended against St. Paul's declaratory judgment action on the grounds that the contractor could not contract away its statutory duty to provide a safe workplace. The Court rejected the defense on the basis that the contractor had fulfilled its nondelegable duty under the Scaffolding Act by settling the claim filed by the injured worker. United had a separate duty under the contract between the contractor and subcontractor, however, to defend the contractor. *United Nat'l Ins. Co.*, ¶ 29. Nothing in the Scaffolding Act prohibited the contractor from entering into a contract to have a third-party indemnify it in the event that it suffer a loss. St. Paul sustained damages in the

9

form of its payment to settle with the injured worker when United breached this duty. *United Nat'l Ins. Co.*, ¶ 34.

¶28 The State similarly had a nondelegable duty to maintain the sidewalks in question. Nothing prevented the State from entering into a contract with the County to maintain the sidewalk. *United Nat'l Ins. Co.*, ¶ 21. The State could have filed a breach of contract action against the County for any damages it claims to have suffered as a result of the County's alleged breach. The State opted instead to rely on theories of common law indemnity and the duty to defend. The State's case necessarily must rise or fall on these theories.

¶29 The County also raised genuine issues of material fact with regard to causation. The Department equipment operator, Marty Hanley, testified that he had hooked the sidewalk with his grader blade while plowing the sidewalk during the winter before Comer's accident. The State attempts to cast doubt on the credibility of Hanley's testimony. This attempt does not negate the fact, however, that Hanley's testimony raised a genuine issue of material fact as to causation sufficient to defeat the State's motion for summary judgment. *Martin v. SAIF Corp.*, 2007 MT 234, ¶ 9, 339 Mont. 167, 167 P.3d 916. All reasonable inferences that may be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment. *Fenno*, ¶ 9. The District Court reasonably determined that the City had raised genuine issues of material fact to defeat summary judgment. *Martin*, ¶ 9.

¶30 *Did the District Court properly deny the State's summary judgment motion regarding common law indemnity?*

¶31 The State concedes that neither construction agreement created an explicit duty on the part of the County to indemnify the State. The State argues instead that the common law theory of indemnity for breach of contract and negligence supports indemnity in this case. The State produces no support for this proposition. The State characterizes its own negligence, if any, as passive relative to the County's active negligence in failing to maintain the sidewalks. The State argues that the County's active negligence as the tortfeasor entitled the State to indemnity.

¶32 Common law indemnity arises from the equitable principle that one compelled to pay for damages caused by another should be able to seek recovery from the responsible party. *Poulsen v. Treasure State Industries, Inc.*, 192 Mont. 69, 82, 626 P.2d 822, 829 (1981). The party compelled to pay for the negligent act of another generally is not entitled to indemnity, however, where both parties are negligent. *Poulsen*, 192 Mont. at 82, 626 P.2d at 829.

¶33 This Court rejected a claim for an implied contractual right of indemnity in *Rogers v. Western Airline*, 184 Mont. 170, 602 P.2d 171 (1979). The Court held that the airline must "show that its liability to a third party arises only because of the relationship between the first party indemnitee and the second party indemnitor, and not due to any negligence on the part of the first party claiming indemnity." *Rogers*, 184 Mont. at 176, 602 P.2d at 174. The State's statutory duty of care to Comer under § 60-2-207, MCA,

11

and 23 U.S.C. § 116(a), exists independently of its contractual relationship with the County and imposes a nondelegable duty of care on the State. *Olson*, ¶ 12. The State's breach of its independent duty of care to Comer precludes the State's common law indemnity claim. The jury determined that the State had breached its statutorily imposed duty of care. The State lacks the "clean hands" necessary to obtain common law indemnity. *See Poulsen*, 192 Mont. at 82, 626 P.2d at 829.

¶34   *Did the District Court properly place the State on the verdict form?*

¶35   The State claims that the District Court should not have placed the State on the verdict form after having granted the State's motion for judgment as a matter of law on the contract issue. The State predicates this claim on the proposition that its contracts with the County relieved it of any liability to Comer. As discussed above, however, the State's independent legal duty arising under federal and Montana statutes negates the State's attempt to shift liability solely to the County based on the County's alleged breach of the construction contracts. Montana and federal law implicate a separate and independent duty of care on the part of the State. The District Court properly placed the State on the verdict form under these circumstances.

¶36   *Did the District Court's trial orders and refusal to give the State's proposed jury instructions deprive the State of its fundamental right to a fair trial?*

¶37   The State appeals the District Court's trial order barring the State from mentioning its cross-claim on the common law indemnity issue. The State likewise appeals the

12

District Court's refusal to give the State's proposed jury instructions on indemnity and the independent contractor rule.

¶38 The State argues that the District Court's order barring it from mentioning its cross-claim constituted "structural error." *State v. Teters*, 2004 MT 137, ¶ 20, 321 Mont. 379, 91 P.3d 559. This Court has limited "structural error" to extreme abuses, such as the total deprivation of the right to counsel or lack of an impartial judge. *State v. McOmber*, 2007 MT 340, ¶ 22, 340 Mont. 262, 173 P.3d 690. A district court possesses broad discretion as to evidentiary matters at trial. *State v. English*, 2006 MT 177, ¶ 31, 333 Mont. 23, 140 P.3d 454.

¶39 We will not overturn a district court's order absent an abuse of discretion. *English*, ¶ 31. The District Court properly emphasized that, notwithstanding the order, the State should develop all of its evidence regarding the parties' respective degrees of negligence. In light of the State's independent statutory duty to Comer, the District Court's refusal to allow the State to mention the cross-claim does not constitute an abuse of discretion, much less a structural error that implicates fundamental rights. *English*, ¶ 31; *State v. Matt*, 2008 MT 444, ¶ 43, 347 Mont. 530, 199 P.3d 244.

¶40 The District Court similarly predicated its refusal to give the State's Jury Instruction No. 33 on its determination that indemnity presented an issue of law for the court to decide. The State's proposed Jury Instruction No. 35 presented an independent contractor theory regarding claims by employees against third parties. The State presented no evidence to establish that the County served as an independent contractor.

The District Court did not abuse its discretion in failing to give the State's proposed jury instructions. *Whidden*, ¶ 22.

¶41 *Did the District Court properly dismiss the State's cross-claim without a determination by the jury or the court as to the fact questions underlying the cross-claim?*

¶42 The State finally argues that the District Court improperly dismissed its cross-claim for common law indemnity. The jury determined that the State bore the majority of responsibility for Comer's accident. The District Court properly dismissed the State's cross-claim when the State lacked the "clean hands" necessary to claim common law indemnity. *See Rogers*, 184 Mont. at 176, 602 P.2d at 174.

¶43 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ JIM RICE


Justice Patricia O. Cotter concurs.

¶44 I concur in the result reached by the Court, but I do not agree with the entire rationale underlying the Court's Opinion. Consistent with Justice Nelson's dissent in *United Nat. Ins. v. St. Paul Fire & Marine*, 2009 MT 269, 352 Mont. 105, 214 P.3d 1260, which I joined, I fail to understand the distinction the Court attempts to make here in ¶¶ 25-28 of the Opinion. Regardless of whether the State sought recovery from the

County under a breach of contract action *or* a common law indemnity action, the result would be the same: the State, as the entity with the non-delegable duty, would be permitted, under our rationale in *United National Insurance,* to shift liability for its non-delegable obligation to another party, in contravention of longstanding public policy and the several cases cited in Justice Nelson's dissent in *United National Insurance* at ¶ 45. I join the result here, however, because I agree with the Court that the State was properly held liable for that portion of the Plaintiff's damages assessed by the jury, in light of its non-delegable duty to maintain the sidewalk. I therefore concur.

/S/ PATRICIA O. COTTER

Justice James C. Nelson joins the Concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON