

DA 07-0226

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 378

CODY J. OLSON,

        Plaintiff, Appellee and Cross-Appellant,

  v.

SHUMAKER TRUCKING AND EXCAVATING
CONTRACTORS, INC.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV 05-1002
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Stephanie A. Hollar and William J. Gregoire, Smith, Walsh, Clarke &
Gregoire, Great Falls, Montana

        For Appellee:

                Kurt M. Jackson and Alexander (Zander) Blewett, III, Hoyt & Blewett,
Great Falls, Montana

Submitted on Briefs:  April 24, 2008

Decided:  November 18, 2008

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Shumaker Trucking and Excavating Contractors, Inc. (Shumaker) appeals from various rulings of the Eighth Judicial District, Cascade County, during the course of a jury trial where the jury found in favor of Cody J. Olson (Olson).  Olson cross-appeals the District Court's denial of his motion for summary judgment on the issue of contributory negligence.  We affirm.

¶2     Shumaker presents the following issues for review:

¶3     Whether the District Court properly instructed the jury as to Shumaker's negligence.

¶4     Whether the District Court properly excluded evidence of Olson's alleged preexisting condition.

¶5     Whether the District Court properly allowed Olson to present evidence that Shumaker alleges constituted hearsay and lacked foundation.

¶6     Whether the District Court properly divided a single pattern instruction into several separate instructions.

¶7     Whether the District Court properly instructed the jury regarding Shumaker's obligation to provide workplace transportation.

¶8     Olson presents the following issue on cross-appeal:

¶9     Whether the District Court properly denied Olson's motion for partial summary judgment on the issue of contributory negligence.

## PROCEDURAL AND FACTUAL BACKGROUND

¶10 Olson worked as a laborer for Balfour Beatty Rail, Inc. (Balfour), a subcontractor of Shumaker, on a project to install a rail line for the Great Falls Development Authority (the Authority). The jobsite was located some distance from the parking area. The distance required the workers to be transported from the parking area to the jobsite. Neither Balfour nor Shumaker provided transportation. Balfour's superintendent, Stephen Green (Green), routinely transported workers in the back of a company pickup truck. Workers also routinely rode on equipment used on the project, including a front-end loader. Workers had been known to ride to and from the jobsite in the bucket of a front-end loader.

¶11 Olson had ridden to the jobsite in the back of Green's pickup truck on the morning of June 8, 2005. Green's pickup was not available at the end of the shift. Only the front-end loader was available. Green instructed the work crew to wait for him to return with the pickup truck. The crew's leader, Mike Roberts, and two others, rode in the cab of the front-end loader. Olson and three of his co-workers climbed into the front-end loader's bucket for the ride back to the parking area.

¶12 The front-end loader's operator lifted the bucket off the ground and began driving to the parking area while Olson's legs dangled in front. One of the men sitting in the cab accidentally bumped a lever causing the bucket to drop suddenly. Olson's right leg became trapped between the bucket and the ground as the front-end loader continued to move forward for several feet. Olson suffered serious injuries to his leg. Olson also

3

suffered post-traumatic stress disorder (PTSD) as a result of the accident.

¶13 Olson brought a personal injury action against Shumaker. Olson alleged that Shumaker's contract with the Authority and the Montana Safety Act obligated it to undertake responsibility for the safety of all persons and employees on the job. Olson claimed that the responsibilities included transportation for workers from the parking area to the jobsite. Olson argued that Shumaker had caused his injuries when it breached that duty by negligently failing to provide transportation.

¶14 The District Court granted partial summary judgment to Olson on the issue of Shumaker's duty to provide a safe workplace. The District Court noted that the contract between Shumaker and the Authority and the Montana Safety Act obligated Shumaker to provide a safe workplace. Shumaker had failed to monitor Balfour employees to ensure safety pursuant to the contract. Shumaker never informed its superintendent of the contract's safety provisions. Shumaker never had informed the superintendent of his duty to monitor Balfour employees to prevent jobsite accidents. The Shumaker superintendent never discussed safety with Balfour. The District Court determined that Shumaker was liable as a matter of law on the grounds that it had breached a nondelegable duty to provide a safe workplace as required by the safety provision in the construction contract between Shumaker and the Authority, and as required by the Montana Safety Act, § 50-71-201, MCA.

¶15 The District Court denied Olson's second motion for summary judgment on the issue of contributory negligence. Olson contended that Shumaker could not, as a matter

4

of law, assert a contributory negligence defense in light of the District Court's previous ruling that Shumaker had breached its nondelegable duty to provide a safe workplace. The District Court characterized Shumaker's liability as arising from a breach of a nondelegable contract duty under the Montana Safety Act. The District Court determined, based upon Montana's statutory comparative negligence scheme, however, that contributory negligence does not constitute delegation or transfer of a nondelegable duty. The court determined that liability based upon negligence per se under the Montana Safety Act, arising from a breach of a nondelegable contract duty, does not preclude comparison and apportionment of contributory negligence as a matter of law in all cases. The District Court concluded that Shumaker had presented evidence showing that Olson's negligence had contributed to his injuries thereby rendering summary judgment inappropriate.

¶16    The case proceeded to trial to determine damages and the extent of the parties' negligence. The parties discussed apportionment and preexisting conditions with the court before the trial in the context of Olson's PTSD claim. Shumaker agreed on the first day of trial that its witness was "not going to talk about preexisting conditions and try and [sic] apportion those" with regard to the PTSD claim. Shumaker confirmed, however, that it would present witness testimony that Olson suffered symptoms of anxiety, rather than PTSD. Shumaker later attempted to present witness testimony showing that the symptoms that Olson had claimed stemmed from PTSD actually related to a longstanding anxiety disorder. The District Court prohibited Shumaker from presenting this evidence

5

on the grounds that Shumaker previously had agreed that it would not apportion or discuss preexisting conditions. The District Court concluded that this testimony would be prejudicial and of marginal relevance "absent some noticed basis for apportionment."

¶17 The District Court presented several jury instructions before the trial. The court instructed the jury that Shumaker had breached its nondelegable duty to provide a safe workplace as required by the safety provision in the construction contract and pursuant to the Montana Safety Act. This Instruction 8 set out at length the factual details of the contract and the accident, and noted the ways in which Shumaker had breached its duty. Instruction 8 instructed the jury that Shumaker had been negligent as a matter of law, and that the jury also could consider Olson's contributory negligence. The instruction ran eight pages.

¶18 Shumaker objected to Instruction 8. Shumaker argued that the instruction should have stated merely that Shumaker was negligent as a matter of law. Shumaker further contended that the length of the instruction had the potential to prejudice Shumaker. Shumaker finally asserted that the instruction suggested that Shumaker's negligence constituted a cause of Olson's injuries. The District Court overruled Shumaker's objection on the basis that the complicated issue of contributory negligence asserted by Shumaker necessitated the factual detail and length.

¶19 Shumaker also objected to Instructions 14 through 22. The District Court based these instructions on Pattern Instruction 25.00 through 25.08. The District Court presented the instructions in the same order in which they appear in the Pattern

Instructions. Shumaker argued, however, that the Commission on Pattern Instructions had intended Pattern Instruction 25 to be given as a single instruction rather than separate instructions. The court determined that presenting the instructions separately constituted the functional equivalent of presenting them as a single instruction in light of the fact that the instructions had been presented in the same sequential order.

¶20 Shumaker also objected to the admission of several of Olson's proposed exhibits. Shumaker objected to Olson's Exhibit 23, an accident report produced by Stephen Green, Balfour's on-site superintendent. Olson presented the evidence during the reading of Green's deposition. Shumaker first objected on the grounds that the report addressed subsequent remedial measures. Shumaker stipulated, after discussion on the record, that the exhibit could be admitted subject to redaction relating to subsequent remedial measures and Shumaker's approval. Shumaker then objected to a portion of the exhibit on the grounds that it constituted "hearsay inside of hearsay." The District Court overruled the hearsay objection on the grounds that Shumaker already had stipulated to the exhibit's admission and in light of the fact that Shumaker should have raised the objection during Green's deposition.

¶21 The jury ultimately rendered a verdict finding Shumaker 90 percent negligent and Olson 10 percent negligent. The jury awarded medical expenses, future lost earnings, damages for physical and emotional pain and suffering, and damages for future loss of established course of life in the amount of $1,044,773. Shumaker's obligation totaled

$940,296 once the Court took into account Olson's contributory negligence. Shumaker appeals and Olson cross-appeals on the issue of contributory negligence.

## STANDARD OF REVIEW

¶22 We review a district court's jury instructions for an abuse of discretion. *Schuff v. Jackson*, 2008 MT 81, ¶ 15, 342 Mont. 156, ¶ 15, 179 P.3d 1169, ¶ 15. A district court has broad discretion to determine the admissibility of evidence. *Schuff*, ¶ 15. We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Schuff*, ¶ 15. We review de novo a district court's grant or denial of a motion for summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Schuff*, ¶ 14.

## DISCUSSION

¶23 *Whether the District Court properly instructed the jury as to Shumaker's negligence*.

¶24 Shumaker contends that Instruction 8 impermissibly commented on the evidence by reciting at length the contract between Shumaker and the Authority, and by discussing various factual findings relating to Shumaker's breach of the contract. Shumaker argues that the instruction represented the District Court's apparent imprimatur of Olson's version of the events.

¶25 Shumaker cites *Cechovic v. Hardin & Associates, Inc.*, 273 Mont. 104, 117, 902 P.2d 520, 528 (1995), in which the Court determined that a proposed instruction that repeated contract language constituted impermissible comment on the evidence. The

8

contract in *Cechovic*, a buy-sell agreement, had been in dispute during trial as to whether it had imposed upon the plaintiffs, buyers of property, the duty to investigate independently the property at issue. *Cechovic*, 273 Mont. at 116-17, 902 P.2d at 527-28. The Court determined that the parties were entitled to argue to the jury the contract's still disputed effect. *Cechovic*, 273 Mont. at 117, 902 P.2d at 528. The Court concluded that including a direct quote from the contract in the instructions "violated principles that prohibit a district court from impermissible comments on the evidence." *Cechovic*, 273 Mont. at 117, 902 P.2d at 528.

¶26    Shumaker also cites *Joseph Eve & Co. v. Allen*, 1998 MT 189, 290 Mont. 175, 964 P.2d 11. The trial court had determined that an employment contract was "not unreasonable, and was thus enforceable." *Joseph Eve*, ¶ 36 (internal quotation marks omitted). The parties disputed, however, whether the contract was binding. *Joseph Eve*, ¶ 36. The Court concluded that the district court properly had stricken language from a jury instruction indicating that the contract was binding. The stricken language would have constituted an impermissible comment on the evidence. *Joseph Eve*, ¶ 36.

¶27    Olson distinguishes *Cechovic* and *Joseph Eve* from the facts here. No dispute exists that the contract between Shumaker and the Authority imposed a nondelegable duty on Shumaker to provide a safe workplace. The District Court determined the contract's effect when it granted Olson partial summary judgment on the issue of Shumaker's duty to provide a safe workplace. Instruction 8, though lengthy, represents an almost verbatim recitation of the facts and conclusions as found during summary

9

judgment proceeding. The court determined that Shumaker was liable as a matter of law on the grounds that it had breached a nondelegable contractual duty to provide a safe workplace. Instruction 8 recites uncontroverted facts regarding Shumaker's express contractual and statutory duty to provide a safe workplace. The instructions and the District Court's conclusions on summary judgment both also refer to the various ways that Shumaker breached its nondelegable duty.

¶28 This Court previously has determined that "'[a]n instruction is not objectionable because it assumes an uncontroverted fact, or one which is admitted or conclusively shown by the evidence.'" *Stockman Bank of Montana v. Potts*, 2006 MT 64, ¶ 79, 331 Mont. 381, ¶ 79, 132 P.3d 546, ¶ 79 (quoting *Bohrer v. Clark*, 180 Mont. 233, 246, 590 P.2d 117, 124 (1978)). Shumaker has not disputed the contract's effect or the facts by contesting the summary judgment ruling before trial or by contesting the partial summary judgment ruling on appeal. The Instruction assumes uncontroverted facts and therefore is unobjectionable. *Stockman Bank*, ¶ 64. The District Court did not abuse its discretion when it issued Instruction 8. *Schuff*, ¶ 15.

¶29 *Whether the District Court properly excluded evidence of Olson's alleged preexisting condition.*

¶30 Olson had complained to one of his treating physicians that he suffered from anxiety relating to the accident. The physician referred Olson to Dr. Peter Stivers, a psychologist, who had briefly treated Olson for attention deficit disorder and behavioral issues when he was in elementary school and high school. Dr. Stivers diagnosed Olson

10

with PTSD. Olson sought damages arising from PTSD in his action against Shumaker.

¶31 Shumaker hired Dr. William Stratford, a psychiatrist, to perform an independent medical examination of Olson's alleged PTSD. Dr. Stratford reviewed Dr. Stivers's evaluations of Olson from elementary school and high school as part of this process. Dr. Stratford concluded that Olson suffered from PTSD arising from his accident. Dr. Stratford further noted, however, that, based upon his own observations and Olson's medical records, Olson suffered from a preexisting anxiety disorder and depression.

¶32 The parties disputed the admissibility of Dr. Stratford's testimony at trial. Shumaker argued that Dr. Stratford should be allowed to impeach Olson as to his claim that he suffered from no preexisting psychological conditions. Shumaker asserted that evidence of Olson's preexisting psychological condition constituted a prior inconsistent statement that should not be precluded. Olson discounted the relevancy of any alleged preexisting conditions unless Shumaker could apportion the injury, or, in other words, prove that Olson's PTSD could be divided between the preexisting condition and the accident-related disorder. The District Court agreed that, absent apportionment, Shumaker could not present testimony from Dr. Stratford regarding Olson's preexisting conditions. Shumaker also stipulated before trial that "Dr. Stratford is not going to talk about preexisting conditions and try and [sic] apportion those. . . ." The District Court noted for the record "that there is consensus that there will be no testimony from Dr. Stratford regarding preexisting conditions."

¶33 Olson called Dr. Stivers to testify regarding his claim of PTSD. Shumaker's

11

counsel inquired whether she would be allowed to question Dr. Stivers about the conditions for which Dr. Stivers had treated Olson in the past. The District Court determined that Shumaker could not question Dr. Stivers about preexisting conditions in light of the fact that Shumaker had failed to apportion. The District Court concluded that testimony regarding Olson's previous psychological symptoms would be irrelevant unless Shumaker intended to assert that the preexisting condition had been PTSD.

¶34     Shumaker argues that a court abuses its discretion when it excludes testimony to impeach a witness with inconsistent statements. This Court has determined, however, that a party cannot impeach a witness by inconsistent statements that are irrelevant, collateral, or immaterial. *E.g. Brockie v. Omo Const., Inc.*, 255 Mont. 495, 502, 844 P.2d 61, 66 (1992); *Moen v. Peter Kiewit & Sons' Co.*, 201 Mont. 425, 437, 655 P.2d 482, 488 (1982). "'A matter is collateral if the impeaching fact could not have been introduced into evidence for any purpose other than contradiction.'" *Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372, 1375 (7th Cir.1990) (citing *United States v. Jarrett*, 705 F.2d 198, 207 (7th Cir. 1983)).

¶35     The plaintiff in *Brockie* examined a State Highway Department employee regarding whether the defendant construction company properly had placed flasher boards that warned drivers of a construction zone ahead. *Brockie*, 255 Mont. at 502, 844 P.2d at 66. The flasher boards had been removed before the witness had a chance to inspect them, although the witness had observed other flasher boards near the scene of the accident. *Brockie*, 255 Mont. at 502, 844 P.2d at 66. The plaintiff attempted to

12

impeach the witness on redirect by questioning him about the flasher boards that he had observed that were unrelated to the accident. *Brockie*, 255 Mont. at 502, 844 P.2d at 66. The Court determined that the district court properly had prohibited the plaintiff from attempting to impeach the witness on redirect as to the unrelated flasher boards. The proposed testimony constituted irrelevant evidence that the plaintiff properly could not use to impeach. *Brockie*, 255 Mont. at 502, 844 P.2d at 66.

¶36 Similarly in *Moen*, the district court prohibited the plaintiff from impeaching a coal company supervisor regarding whether the supervisor had requested on Friday night or Saturday morning that the plaintiff work an overtime Saturday shift. *Moen*, 201 Mont. at 437, 655 P.2d at 488. The Court determined that no causal connection existed between the supervisor's request that the plaintiff work overtime and the heart attack that the plaintiff suffered during the overtime shift. *Moen*, 201 Mont. at 437, 655 P.2d at 488. The Court deemed the proposed impeachment testimony a collateral matter, "neither relevant nor material to the issue in controversy . . . ." *Moen*, 201 Mont. at 437, 655 P.2d at 488. Shumaker failed at trial, and fails now on appeal, to explain the relevancy of Olson's alleged preexisting condition absent apportionment, except to assert that it is relevant to impeach Dr. Stivers. Evidence introduced for the sole purpose of impeaching a witness is not otherwise relevant or material. *See Taylor*, 920 F.2d at 1375.

¶37 A jury may consider apportionment of damages only if the defendant proves "by a reasonable medical probability, that the injury is divisible and that he is only liable for a portion of those damages." *Truman v. Montana 11th Jud. Dist. Ct.*, 2003 MT 91, ¶ 32,

13

315 Mont. 165, ¶ 32, 68 P.3d 654, ¶ 32 (citing *Callihan v. Burlington Northern Inc.*, 201 Mont. 350, 357, 654 P.2d 972, 976 (1982)). Shumaker did not challenge Olson's claim that he suffered from PTSD. Shumaker also failed to apportion the damages by proving by a reasonable medical probability that Olson's PTSD is divisible and that Shumaker is liable for only a portion of the damages. *Truman*, ¶ 32. Shumaker expressly declined to apportion. Olson's preexisting condition constituted irrelevant, collateral, and immaterial evidence, absent apportionment, that Shumaker could not present to impeach Dr. Stivers. *Brockie*, 255 Mont. at 502, 844 P.2d at 66; *Moen*, 201 Mont. at 437, 655 P.2d at 489. The District Court properly exercised its broad discretion when it prohibited Shumaker from cross-examining Dr. Stivers as to Olson's preexisting condition. *Schuff*, ¶ 15.

¶38 Shumaker also asserts that the District Court abused its discretion when it prohibited Shumaker from presenting evidence of Olson's preexisting condition at trial as this precluded Shumaker from effectively challenging causation. Shumaker cites *Estate of Strever v. Cline*, 278 Mont. 165, 175, 924 P.2d 666, 672 (1996) and *Prindel v. Ravalli County*, 2006 MT 62, ¶ 45, 331 Mont. 338, ¶ 45, 133 P.3d 165, ¶ 45, for the proposition that causation ordinarily falls to the fact finder. Shumaker argues that it should have been permitted to bring evidence of Olson's preexisting condition notwithstanding its failure to apportion "to negate allegations that he is the cause or sole cause of [the] injury." *Truman*, ¶ 31.

¶39 Shumaker fails to note, however, that *Truman* further states that in order to negate those allegations the defendant first must "prove by a reasonable medical probability, that

14

the injury is divisible and that he is only liable for a portion of those damages." *Truman*, ¶ 32. Shumaker failed to prove that it was liable only for a portion of Olson's PTSD damages. In fact, Shumaker expressly declined to apportion Olson's injury. The District Court properly exercised its broad discretion when it prohibited Shumaker from questioning Dr. Stivers regarding Olson's preexisting condition. *Schuff*, ¶ 15.

¶40 Shumaker finally argues that the District Court should have allowed the jury to consider preexisting conditions in order to determine whether Olson's negligence had been an intervening or superseding cause of his injury. We decline to address this argument in light of our conclusion that Shumaker's failure to apportion precluded it from presenting evidence related to Olson's alleged preexisting condition. ¶ 39.

¶41 *Whether the District Court properly allowed Olson to present evidence that Shumaker alleges constituted hearsay and lacked foundation.*

¶42 Shumaker argues that the District Court improperly admitted Exhibit 23, an accident report created by Balfour's on-site superintendent, Stephen Green. Shumaker argues first that it never waived its objection to Exhibit 23. Shumaker claims that the District Court explicitly had preserved all pretrial motions, including Shumaker's motion to exclude Exhibit 23. Shumaker cites the District Court's statement that "[n]ow, the way that I read the briefs on the issue, the essence of it appeared to be that . . . the defendant does not concede or in any way compromise its prior opposition or objection to the pre-trial rulings that the Court has made." Shumaker fails to point out, however, that the

15

District Court was referring to Shumaker's objection to Olson's motion to pre-instruct the jury. Shumaker simply takes the court's language out of context.

¶43    Shumaker next asserts that the District Court violated M. R. Civ. P. 32(b) when it ruled that Shumaker had waived its objection by failing to bring it contemporaneously with the deposition. M. R. Civ. P. 32(b) provides that "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Rule 32(b) must be read subject to the provisions of M. R. Civ. P. 32(d)(3). Rule 32(d)(3)(A) provides that a party waives objections to a witness's competency or the competency, relevancy, or materiality of testimony, if not made at the deposition if "the ground of the objection is one which might have been obviated or removed if presented at that time."

¶44    Shumaker's objection regarding whether Green had first hand knowledge of the events that he described in his accident report go to the witness's competency and the foundation for the exhibit. The District Court noted that Shumaker's objection could have been resolved during the deposition by inquiry at that time into the foundation for the observations contained in Green's report. Shumaker has not argued to the contrary. M. R. Civ. P. 32(d) is nearly identical to Fed. R. Civ. P. 32(d). The rule's general principle "is to require defects in the taking of depositions to be pointed out promptly on pain of waiver . . . [in order to] give the erring party an opportunity to correct the mistake,

16

and to prevent waste of time and money . . . ." Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, Ch. 6, § 2153 (1994).

¶45 Shumaker finally asserts that its filing of the pretrial motion preserved its objection for appeal pursuant to M. R. App. P. 4(c). Shumaker cites to a version of the rule as amended on October 23, 2003, now codified at M. R. App. P. 4(4)(a). *Glacier Tennis Club v. Treweek Const.*, 2004 MT 70, ¶ 30 n. 2, 320 Mont. 351, ¶ 30 n. 2, 87 P.3d 431, ¶ 30 n. 2, *overruled on other grounds*, *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 21, 336 Mont. 105, ¶ 21, 152 P.3d 727, ¶ 21. Shumaker contends that it preserved for appeal its objection to Green's testimony when it objected in a pretrial motion on February 21, 2007. M. R. App. P. 4(4)(a) provides that "[a]n appeal from a judgment draws into question all previous orders and rulings excepted or objected to which led up to and resulted in the judgment." Shumaker's assertion of Rule 4(4)(a) does not cure, however, its failure to object to Green's testimony contemporaneously with the deposition pursuant to M. R. Civ. P. 32(d)(3). The District Court did not abuse its discretion when it allowed Olson to present Exhibit 23 at trial. *Schuff*, ¶ 15.

¶46 *Whether the District Court properly divided a single pattern instruction into several separate instructions.*

¶47 Shumaker contends that the District Court improperly emphasized damages when it presented Montana Pattern Instructions 25.00 through 25.08 separately instead of as a single instruction. Shumaker argues that Instructions 14 through 22 suggested to the jury that it must provide Olson with an award, as many of the instructions began, "[y]our

17

award should include . . . ." Shumaker cites no authority, however, other than to point out that the Commission Comments to the initial subsection provide that "[t]his is an introductory paragraph intended to be combined, in one instruction with other applicable damage instructions which follow." Shumaker asserts that this comment constitutes a mandate.

¶48 We consider the instruction in its entirety, as well as in connection with other instructions given, and the evidence introduced at trial when reviewing whether a district court properly gave or refused a particular jury instruction. *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, ¶ 74, 162 P.3d 106, ¶ 74. The party assigning error to a district court's instruction must show prejudice in order to prevail. *Murphy*, ¶ 74. We will not find prejudice if the jury instructions in their entirety state the applicable law of the case. *Murphy*, ¶ 74.

¶49 Shumaker challenges these instructions only as to form. Shumaker does not challenge the District Court's accuracy in stating the applicable law of the case. We determine that Shumaker has failed to establish that Instructions 14 through 22 caused prejudice. *Murphy*, ¶ 74. The District Court did not abuse its discretion when it presented the jury with Instructions 14 through 22. *Schuff*, ¶ 15.

¶50 *Whether the District Court properly instructed the jury regarding Shumaker's obligation to provide workplace transportation.*

¶51 Shumaker contends that Instruction 8 provided the jury with an erroneous fact when it stated that the contract between Shumaker and the Authority generally required

18

Shumaker to "furnish and assume full responsibility for all materials, labor, *transportation*, construction equipment, machinery and tools." (Emphasis added). Shumaker argues that the contract did not contemplate creating in Shumaker a duty to "furnish and assume full responsibility" for transportation for its subcontractor, Balfour. Shumaker asserts that Instruction 8 misled the jury to believe that Shumaker had a nondelegable duty to provide transportation to the Balfour employees.

¶52 Instruction 8 simply restates the District Court's conclusions in granting Olson partial summary judgment on the issue of Shumaker's duty to provide a safe workplace. The District Court had ruled that the contract between the Authority and Shumaker imposed upon Shumaker a nondelegable duty to its subcontractor's workers to assume full responsibility for a number of things under the contract, including transportation.

¶53 We review de novo a district court's grant or denial of a motion for summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Schuff*, ¶ 14. We have not been asked, however, to review the District Court's grant of Olson's motion for summary judgment on the issue of Shumaker's duty to provide a safe workplace. Shumaker instead has appealed Instruction 8. We review a district court's jury instructions for an abuse of discretion. *Schuff*, ¶ 15.

¶54 The District Court determined in granting partial summary judgment to Olson that the nature of Shumaker's contractual obligation constituted a material fact as to which no genuine issue existed. M. R. Civ. P. 56. Shumaker has not challenged the District Court's determination. This Court previously has determined that "'[a]n instruction is

not objectionable because it assumes an uncontroverted fact, or one which is admitted or conclusively shown by the evidence.'" *Stockman Bank*, ¶ 79 (quoting *Bohrer*, 180 Mont. at 246, 590 P.2d at 124). The District Court did not abuse its discretion when it instructed the jury that Shumaker had assumed the contractual duty to provide Balfour's workers with a safe workplace, including transportation to the jobsite. *Schuff*, ¶ 15.

¶55 *Whether the District Court properly denied Olson's motion for partial summary judgment on the issue of contributory negligence*.

¶56 Olson argues for the first time on cross-appeal that the District Court's determination that Shumaker could assert the defense of contributory negligence violated his right to "full legal redress" pursuant to Article II, Section 16 of the Montana Constitution. We decline to address this argument as this Court generally will not address issues that were not raised before the district court. *Owens v. Montana Dept. of Revenue*, 2007 MT 298, ¶ 2, 340 Mont. 48, ¶ 2, 172 P.3d 1227, ¶ 2.

¶57 Olson also argues on cross-appeal that the District Court improperly delegated Shumaker's duty to provide a safe workplace when it allowed the jury to consider whether Olson had been contributorily negligent. Olson cites *Ulmen v. Schweiger*, 92 Mont. 331, 12 P.2d 856 (1932), in which this court first recognized the nondelegable duty rule, for the proposition that a defendant remains absolutely liable where a nondelegable duty exists. The Court determined that where a nondelegable duty to provide a safe work environment exists, the general contractor "cannot evade liability by employing another to do that which he has agreed to perform." *Ulmen*, 92 Mont. at 348, 12 P.2d at 860.

20

Olson notes that the Court in *Nave v. Harlan Jones Drilling*, 252 Mont. 199, 202-03, 827 P.2d 1239, 1240-41 (1992), clarified that a general contractor who assumes nondelegable, contractual duties of safety "cannot avoid liability by attempting to shift the responsibility to someone else," particularly a subcontractor.

¶58 The District Court determined that the nondelegable duty arose from the contract at issue in this case as well as from the Montana Safety Act, § 50-71-201, MCA. The Act requires that each employer provide safety devices and equipment "that may be required by state or federal law, the employer or the terms of an employment contract. . . ." Section 50-71-201(2), MCA. Previous decisions of this Court have affirmed that this statute confers a nondelegable duty to provide a safe workplace on the employer. *See e.g. Shannon v. Howard S. Wright Const. Co.*, 181 Mont. 269, 281-83, 593 P.2d 438, 445-46 (1979); *Stepanek v. Kober Const.*, 191 Mont. 430, 439, 625 P.2d 51, 56 (1981). The District Court concluded that Shumaker's violation of the Act constituted negligence per se according to *Trankel v. State Dept. of Military Affairs*, 282 Mont. 348, 365, 938 P.2d 614, 625 (1997).

¶59 Section 27-1-702, MCA, provides, on the other hand, that "damages allowed must be diminished in proportion to the percentage of fault attributable to the person recovering." This statute imposes upon each plaintiff the duty to conform to a standard of conduct for his own protection in order that his conduct does not constitute a "legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." *Restatement (Second) of Torts* §§ 463, 464 (2008).

21

¶60    The statutory nondelegable duty arising from the Montana Safety Act stands in tension with the general duty to avoid harm to oneself under the contributory negligence statute at § 27-1-702, MCA. Olson suggests that the two concepts are plainly incompatible. This Court has not yet faced a factual scenario that required it to address squarely the question of whether a nondelegable duty pursuant to the Montana Safety Act precludes the defense of contributory negligence. This Court previously has addressed this question indirectly, however, in the absence of a factual scenario that required a direct ruling on the issue. *See Shannon*, 181 Mont. 269, 593 P.2d 438; *Stepanek*, 191 Mont. 430, 625 P.2d 51; *Cain v. Stevenson*, 218 Mont. 101, 706 P.2d 128 (1985). The Court suggested in each of these decisions that a defendant may assert the defense of contributory or comparative negligence even though that defendant has a nondelegable duty pursuant to contract or the Montana Safety Act.

¶61    The employee in *Shannon* had been working on the second floor of a partially completed condominium project. Workers could access the second floor either by walking an eight-inch wide plank set over a deep ditch, or by climbing a ladder into a second floor window. The employee chose the ladder and suffered injuries. *Shannon*, 181 Mont. at 271, 593 P.2d at 439. The Court determined that the contractor owed the subcontractor's employee a nondelegable duty to provide a safe workplace based upon both common law principles and the Montana Safety Act. *Shannon*, 181 Mont. at 281-83, 593 P.2d at 445-46. The Court also considered the contributory negligence question in the pre-comparative negligence context. The Court concluded that the employee's

contributory negligence did not bar him from recovering from the contractor because (1) "he had no way to avoid the unsafe conditions which existed [on the jobsite] other than foregoing his employment;" and (2) "it was foreseeable to the defendants that he might forget to exercise a sufficient degree of caution in his repeated trips up and down the ladders." *Shannon*, 181 Mont. at 283, 593 P.2d at 446.

¶62 The subcontractor's employee in *Stepanek* suffered injuries when he fell from scaffolding. *Stepanek*, 191 Mont. at 431, 625 P.2d at 52. The Court considered contributory negligence without any analysis of whether it remained available as a defense in the face of a breach of a nondelegable duty. *Stepanek*, 191 Mont. at 433-39, 625 P.2d at 56. The Court concluded that the contractor owed the employee a nondelegable duty of care based upon the contract, the Montana Safety Act, and the Montana Scaffolding Act. *Stepanek*, 191 Mont. at 439, 625 P.2d at 55. The Court determined that the employee had not been contributorily negligent as a matter of law, however, as the evidence suggested that he either performed his work on the scaffolding or risked termination. *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56. The Court also recognized the fact that the employee had not constructed the faulty scaffolding. *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56.

¶63 The Court in *Cain*, 218 Mont. at 104-05, 706 P.2d at 130-31, citing *Shannon* and *Stepanek*, determined that the Montana Safety Act created a nondelegable duty that included the subcontractor's employee. The appellant in *Cain* also asked the Court to review "[w]hether the District Court was in error in not reducing the jury's award of

23

damages by the jury's finding of comparative negligence on the part of respondent." *Cain*, 218 Mont. at 103, 706 P.2d at 130. The Court, once again with no analysis, instructed the trial court on remand to reduce the plaintiff's award by the percentage of comparative negligence that the jury had determined initially. *Cain*, 218 Mont. at 106, 706 P.2d at 132.

¶64 The District Court determined that *Shannon*, *Stepanek*, and *Cain*, taken together, suggest that this Court has implied that comparative or contributory negligence remains available as a defense even if the defendant has a nondelegable duty pursuant to the Montana Safety Act. The District Court reasoned that *Shannon* and *Stepanek* indicate that contributory or comparative negligence remains available to the defendant if evidence exists demonstrating that: (1) the worker has a reasonable means or opportunity to avoid the hazard without endangering his or her employment; or (2) the subject harm was not a reasonably foreseeable consequence of the contractor's breach of a nondelegable safety duty. *See Shannon*, 181 Mont. at 283, 593 P.2d at 446, *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56.

¶65 Olson distinguishes these cases on the grounds that the District Court already determined that Shumaker's breach had caused Olson's injuries as a matter of law. Olson argues that he could not be required to avoid harm that the Court determined to be a danger created by Shumaker's breach. Olson seems to be arguing in favor of a separate rule that would bar contributory or comparative negligence where the plaintiff has established breach as a matter of law. Olson fails to cite any authority, however, to

24

support his contention.

¶66 Our analysis regarding the availability of the contributory negligence defense in the context of negligence per se generally provides guidance. A plaintiff must prove five elements in order to establish negligence per se: (1) the defendant violated a particular statute; (2) the Legislature intended the statute to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the Legislature intended the statute to prevent plaintiff's injury; and (5) the Legislature intended the statute to regulate a member of defendant's class. *Edie v. Gray*, 2005 MT 224, ¶ 16, 328 Mont. 354, ¶ 16, 121 P.3d 516, ¶ 16. The District Court concluded that Shumaker's breach of its nondelegable duty under the Montana Safety Act constituted negligence per se.

¶67 Establishing the existence of negligence per se settles only the questions of duty and breach. A plaintiff still must prove causation before she may recover. *Estate of Schwabe v. Custer's Inn*, 2000 MT 325, ¶ 27, 303 Mont. 15, ¶ 27, 15 P.3d 903, ¶ 27, *overruled on other grounds*, *Giambra v. Kelsey*, 2007 MT 158, ¶ 58, 338 Mont. 19, ¶ 58, 162 P.3d 164, ¶ 58. This Court has concluded repeatedly that a jury may weigh or compare evidence of negligence from a statutory violation that constitutes a proximate cause of the injury along with other evidence of negligence on the part of both parties. *Reed v. Little*, 209 Mont. 199, 207, 680 P.2d 937, 941 (1984). Even when a defendant is negligent as a matter of law, however, the issue of contributory negligence on the part of the plaintiff "is normally an issue for the jury or fact finder to resolve." *Pierce v. ALSC Architects, P.S.*, 270 Mont. 97, 107, 890 P.2d 1254, 1260 (1995).

¶68 More recently in *Giambra*, ¶ 51, we noted that a determination that a party was negligent per se does not preclude the defense of contributory negligence "[i]n the absence of an express statutory provision to the contrary . . . ." Nothing in the Montana Safety Act indicates that the Legislature intended to abolish the availability of comparative or contributory negligence. We declared instead that Montana's comparative and contributory negligence scheme "requires the fact-finder to consider the negligence of the claimant, injured person, defendants, and third-party defendants, even if a party proceeds under a claim of negligence per se. . . ." *Giambra*, ¶ 51. Similarly, in *Edie* we stated the same general proposition that "even in negligence per se cases, the fact finder must apportion negligence between the two parties in reaching its verdict." *Edie*, ¶ 19.

¶69 The defense of contributory negligence remained available to Shumaker based upon the test set out by *Shannon* and *Stepanek*. Contributory negligence remains available as a defense to a defendant who has been found to have breached its nondelegable duty to provide a safe working environment if evidence demonstrates that: (1) the worker has some reasonable means or opportunity to avoid the hazard without endangering his or her employment; or (2) the subject harm was not a reasonably foreseeable consequence of the contractor's breach of the nondelegable safety duty. *Shannon*, 181 Mont. at 283, 593 P.2d at 446; *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56.

26

¶70 Shumaker has not asserted, and the evidence does not suggest, that Olson's injury was not a reasonably foreseeable consequence of Shumaker's breach. Shumaker presented ample evidence before the District Court's ruling on Olson's motion for summary judgment, however, that suggested that Olson reasonably could have avoided the hazard without endangering his employment. *Shannon*, 181 Mont. at 283, 593 P.2d at 446; *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56. Shumaker presented evidence that Olson's supervisor urged Olson and the others to wait for him to give them a ride in his truck rather than ride on the front-end loader. Shumaker presented evidence that refuted Olson's suggestions that Olson's crew leader directed Olson to ride on the front-end loader. Shumaker also presented evidence that Olson had been aware of Shumaker's safety policy barring employees and workers from riding on construction equipment.

¶71 The District Court correctly concluded that this evidence created a genuine issue of material fact as to whether Olson had been contributorily negligent pursuant to *Shannon* and *Stepanek*. M. R. Civ. P. 56(c); *Shannon*, 181 Mont. at 283, 593 P.2d at 446, *Stepanek*, 191 Mont. at 438-39, 625 P.2d at 56. The District Court properly denied Olson's motion for summary judgment on the issue of contributory negligence. *Schuff*, ¶ 14.

¶72 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY

27

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

Justice James C. Nelson, concurring in part and dissenting in part.

¶73    I concur in the Court's decision except as to Olson's cross-appeal issue (whether the District Court properly denied his motion for partial summary judgment on the issue of contributory negligence), addressed at ¶¶ 55-71 of the Opinion. With regard to that issue, I would reverse and remand with instructions that the verdict as to Olson's alleged contributory negligence be vacated and that the entire verdict be reinstated without any reduction for contributory negligence.

¶74    Today's decision is a sea change in the law governing a contractor's breach of its contractually-assumed, nondelegable duty of safety to employees. This "nondelegable" duty can now be delegated to the very persons that the nondelegable-duty doctrine was designed to protect—injured workers. Today, the Court holds that employees are now responsible for their own safety if "(1) the worker has some reasonable means or opportunity to avoid the hazard without endangering his or her employment; or (2) the subject harm was not a reasonably foreseeable consequence of the contractor's breach of the nondelegable safety duty." Opinion, ¶ 69. As a result, it is now possible for the breaching contractor to foist its "nondelegable" duty of safety on the injured employee under the guise of contributory negligence. Under the test the Court adopts, we should

28

now expect to see breaching contractors arguing that the injured employee is responsible for part, if not all, of his or her own injury, notwithstanding that the contractor assumed a duty to supervise and provide for safety in the workplace that, hitherto, was *not delegable* to any other person or entity. The Court's unfortunate decision here effectively nullifies the nondelegable-duty doctrine, and it results in a grossly unfair result under the facts and circumstances of this case.

¶75 For three quarters of a century, Montana law has been clear and unambiguous. Where a contractor, by contract, specifically agrees to ensure safety, that duty cannot be "delegated to another so as to relieve [the contractor] of responsibility for its nonperformance." *Ulmen v. Schwieger*, 92 Mont. 331, 347, 12 P.2d 856, 859 (1932). To that end, an employer who has assumed a specific duty by contract cannot "evade liability" by imputing to another that which he has agreed to perform. *Ulmen*, 92 Mont. at 348, 12 P.2d at 860. In *Stepanek v. Kober Construction*, 191 Mont. 430, 625 P.2d 51 (1981), we held that a general contractor's nondelegable duty to maintain and supervise job safety extended to employees of a subcontractor. *Stepanek*, 191 Mont. at 434-38, 625 P.2d at 53-55. We reviewed important public policy concerns, including preventing accidents in the workplace and protecting against the economic costs of injuries. We concluded that the general contractor had a nondelegable duty to provide a safe working environment for the employees of subcontractors. We also determined that the duties of the general contractor mandated by the Montana Safe Place statute, § 50-71-201, MCA, are owed to the employees of a subcontractor if there is a nondelegable duty arising out

29

of contract. *Stepanek*, 191 Mont. at 438, 625 P.2d at 55. Indeed, we also held that the injured worker could not be held contributorily negligent as a matter of law. *Stepanek*, 191 Mont. at 439, 625 P.2d at 56.

¶76 In *Nave v. Harlan Jones Drilling*, 252 Mont. 199, 827 P.2d 1239 (1992), we held that a general contractor who assumes a nondelegable, contractual duty of safety "cannot avoid liability by attempting to shift the responsibility to someone else." *Nave*, 252 Mont. at 203, 827 P.2d at 1241. And in *Shannon v. Howard S. Wright Construction Co.*, 181 Mont. 269, 593 P.2d 438 (1979), we held that the general contractor had a duty to provide the employees of its subcontractors with a safe place to work because each retained control over the working conditions at the worksite. *Shannon*, 181 Mont. at 283, 593 P.2d at 446.

¶77 In the case at bar, we effectively nullify this well-established nondelegable duty doctrine. Here, the trial court allowed Shumaker to evade liability for breach of its nondelegable duty to provide a safe workplace by delegating that duty to subcontractor Balfour (Olson's employer) and to Olson himself. Specifically, Shumaker presented evidence concerning safety meetings held by Balfour and argued that Olson was contributorily negligent by violating Balfour's safety program. In this way, Balfour could blame Olson for "riding" on equipment in violation of safety rules, even though the nondelegable duty to provide safe transportation was Shumaker's. On one hand, the court ruled that Shumaker breached its nondelegable duty to "furnish and assume full responsibility for . . . transportation," but on the other hand, the court allowed Shumaker,

30

through the testimony of Stephen Green (Balfour's on-site superintendent), to blame Olson for not walking from the jobsite on the day of the accident. Olson's injury occurred because Shumaker completely abandoned the jobsite and left all safety duties to Balfour.

¶78 On the day of the accident, Balfour transported Olson's work crew to the jobsite in the box of Green's pickup. However, Olson and other workers were transported from the jobsite in the front-end loader because Green and his pickup were occupied elsewhere. Shumaker was nowhere to be found.

¶79 On the day of the accident, Olson was 18 years old and had an eleventh grade education. He was the newest and youngest employee on his crew. Olson had been instructed to "pay attention" to his co-worker, Mike Roberts, who was the lead man. Prior to the accident, Olson had seen other employees being transported on the front-end loader. At the end of a physically fatiguing workday, and in the absence of Green and his pickup, Olson observed his superior and crew leader, Roberts, along with his fellow employees, climb aboard the loader to be transported from the jobsite to where the workers had parked their personal vehicles. It was not Olson's idea to be transported in the loader bucket; he was the last to get into the bucket. Given that his superior, Roberts, climbed into the cab of the loader, and because his fellow employees were being transported in the bucket, Olson believed that this form of transportation was not prohibited. No one told him otherwise. Indeed, Olson felt that he had no choice but to be transported in the bucket—everyone else in his crew was being transported from the

31

jobsite in that fashion, and Roberts, the "lead man," was in the cab. No alternate form of transportation was offered to Olson. He had two choices: walk some distance back to the parking area, or ride in the bucket.

¶80 It is on these facts that this Court asserts Olson had some reasonable means or opportunity to avoid the hazard without endangering his employment. Opinion, ¶ 70. The Court's assertion ignores the realities of the workplace and places an unreasonable burden on ordinary workers such as Olson.

¶81 If an employee's superior and the employee's senior co-employees engage in a particular workplace practice, it should come as no surprise that the newest and youngest member of the crew will be carried along. Indeed, we contemplated that in our decision in *Shannon*. *See Shannon*, 181 Mont. at 272, 593 P.2d at 440. Notwithstanding, the Court expects that Olson reasonably should have foreseen that a consequence of riding in the bucket would be that his supervisor would negligently cause the bucket to drop without warning, causing serious injury to Olson's leg, and that he would have, therefore, told his superior that he was not going to ride in the bucket with his co-workers but, rather, was going to walk some distance back to his transportation after a physically fatiguing day.

¶82 While this proposition may serve as the basis for a theoretical legal argument, it makes no sense in the real-world workplace. An ordinary worker—especially the newest and youngest member of his crew—is going to do what he is told by his superior,

32

especially when he has been instructed to "pay attention" to that person. Green's "Incident Analysis" concluded that:

> Safety was overlooked due to the following conditions: Workers fatigued at end of shift, long distances of the job site, minimal access from the site impassible from recent severe rain storm, *not enough transportation for whole crew at one time*, all played a part in the decision made to ride in the loader bucket. [Emphasis added.]

Under these circumstances and facts, for this Court to impose upon Olson an obligation to foresee the tragic consequences of riding in the bucket or the brashness to tell his boss and fellow employees that he is not going to accept the only transportation available to him, is both unfair and unrealistic—indeed it is absurd. Olson should not be held responsible for accepting the only available means of transportation when he was compelled to do so solely because of Shumaker's breach of its nondelegable contractual duty and statutory duty to provide safe transportation to and from the jobsite.

¶83 Shumaker's nondelegable duty should not be foisted upon Olson. The only reason Olson was put into the position of being transported in the front-end loader was because Shumaker undisputedly abdicated and breached its nondelegable duty to supervise safety and provide safe transportation. Thus, the only reason he was even in the position of having to meet the Court's new test—i.e., to find "some reasonable means or opportunity to avoid the hazard without endangering [his] employment," or to "reasonably foresee[ ]" the consequence of Shumaker's breach of its nondelegable safety duty, Opinion, ¶ 69—is because Shumaker breached that duty in the first place. Olson did nothing to contribute

33

to Shumaker's breach. He was simply following the "lead man's" lead and was doing what his fellow employees were compelled to do because of Shumaker's breach.

¶84 The Court's decision in this case turns the nondelegable-duty doctrine on its head. No longer is the contractor's assumption of nondelegable duties of safety truly "nondelegable." We now hold that the injured worker has an affirmative duty to avoid the very harm that the contractor has a *nondelegable* duty to prevent. We now delegate and impute to the injured worker the contractor's nondelegable duty to prevent the foreseeable consequence of the contractor's own failure to supervise and provide a safe workplace. We now allow the contractor to delegate its nondelegable safety duty.

¶85 If, as our caselaw clearly provides, contractual nondelegable duties of safety are truly that—nondelegable—then contributory negligence and comparative fault cannot be available to the breaching contractor as affirmative defenses. Where, as here, the breach of the general contractor's nondelegable duty to provide safe transportation and the issue of causation have already been determined, as a matter of law, then any issue of the injured worker's alleged contributory negligence must be foreclosed. In failing to recognize this principle, the trial court, and now this Court, have effectively nullified the nondelegable-duty rule. Contributory negligence should not have been submitted to the jury. The District Court erred in doing so, and we err in affirming the court's decision.

¶86 Accordingly, while I concur in the Court's decision on the issues presented by Shumaker, I strenuously dissent from the Court's decision on Olson's cross-appeal issue.

As to that issue, I would reverse and order the District Court to reinstate the full verdict in Olson's favor, without deduction for his supposed contributory negligence.

¶87    I dissent from the Court's contrary decision.


/S/ JAMES C. NELSON