DA 08-0283

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 106N

RUSSELL MORRISON,

      Plaintiff and Appellee,

  v.

ALLEN A. MORRISON and MARIE S. MORRISON,

      Respondents and Appellants.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Granite, Cause No. DV-2006-010
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Sean Morris, Worden Thane P.C., Missoula, Montana

      For Appellee:

          Richard R. Buley, Torrance L. Coburn, Tipp & Buley, Missoula, Montana

Submitted on Briefs:  March 11, 2009

Decided:  March 31, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Marie Morrison (Marie) appeals from a jury verdict in the Third Judicial District Court, Granite County, finding a constructive trust in favor of her son, Appellee Russell Morrison (Russell). Under § 72-33-219, MCA, "[a] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." The practical effect of the jury's finding of a constructive trust is that Russell is entitled to ownership of the Morrison family ranch which is currently owned by Marie. For the reasons set forth below, we affirm the jury's verdict.

¶3 Marie is a long-time resident of Phillipsburg, Montana. Marie and her now-deceased husband, Allen Morrison (Scotty) owned a ranch in Granite County. They had four children: Gary, Larry, Jeannette and Russell. Russell lived and worked on the ranch his whole life. For many years, Russell played a major role in managing and maintaining the family ranch, while the other children had all moved away.

¶4 Sometime in 1989, Scotty and Marie entered into a management agreement with Russell setting forth his duties and responsibilities for managing the ranch. The

2

agreement was drafted by their attorney, Jim Masar (Masar). At some point, Scotty and Marie considered deeding their ranch to Russell, because Russell was not doing his ranch work very well, and it was hoped that by giving him the ranch he would do a better job taking care of it. Eventually, on May 31, 2004, Marie and Scotty deeded the ranch to Russell.

¶5     Marie claims that the deeding of the ranch was not a direct gift, and that Russell had two obligations in return for the ranch. First, Russell had to pay off the loans associated with the ranch property. Second, Russell was obligated to buy a house for Scotty and Marie in Missoula. Marie claims that due to health concerns, they wanted to be in Missoula to have better access to health care. Additionally, Scotty wanted to be in Missoula to be closer to his great-grand children.

¶6     After receiving the deed to the ranch, Marie claims that Russell failed to live up to his end of the bargain. First and foremost, Marie claims that Russell did not take care of the loans, and that the ranch was threatened with foreclosure. Certain provisions in the loans prohibited the property from being transferred unless the loans were paid off, and unless proper consent to transfer was obtained from the institutions who were parties to the loans. However, Russell was undergoing an apparent bout of depression at the time, and did not take care of the matter. The situation eventually became very serious, with the bankers and Masar attempting to intervene to save the ranch.

¶7     To remedy the situation, Masar, Scotty, Marie and Russell met on March 9, 2005. What happened at that meeting was a serious point of contention between the parties at trial. At the meeting, Russell re-conveyed the ranch to Marie and Scotty. Marie asserts

that he was told at the time that if he got his financing together they would "reconsider" transferring the ranch back to him. Marie's version of events was supported by her testimony, as well as notes that Masar took at that meeting. Russell, on the other hand, claims that he transferred the ranch back to his parents only so that he could make arrangements to have the loans taken care of and avoid foreclosure of the ranch. He denies that he ever promised to purchase a home for his parents in Missoula in exchange for a future transfer of the ranch.

¶8    After the ranch was deeded from Russell back to his parents, Marie claims that he still did not follow through on his obligations to take care of the loans. In fact, Marie contends that even by the time of trial Russell had still not performed his end of the bargain. In November 2005, Marie was diagnosed with a bleeding ulcer and was taken to a hospital in Missoula. After this event, Marie claims that Scotty decided they would have to move to Missoula because he was dependent on Marie and could not take care of her.

¶9    Some time after Marie's hospitalization, all of the children were in town and discussed the future of the ranch. Marie claims that after this discussion, it was decided that the ranch would be sold off, with Russell receiving the majority of the proceeds. At that time, the ranch had been valued at around $1.2 million dollars. Russell refused to go along with this proposal, asserting that he wanted the ranch intact.

¶10    On April 25, 2006, Russell filed suit against Scotty and Marie arguing that he was entitled to the ranch under a theory of constructive trust. A trial was held before a twelve person jury on October 2 through 4, 2007. Prior to trial, Scotty died and his testimony

4

was placed into the record through a deposition he had previously given. At trial, Russell, Marie, Masar, and two of the Morrison children, Gary and Jeannette, testified.

¶11 As a defense to Russell's claims, Marie argued that Russell had failed to perform his obligations—i.e., taking care of the loans, and buying Marie and Scotty a house in Missoula—and thus was not entitled to the ranch by virtue of his breach of an alleged "grantor-support agreement." Grantor-support agreements arise in situations where elderly parents transfer property to their children in consideration for support and maintenance. *Hjartarson v. Hjartarson*, 2006 MT 273, ¶ 25, 334 Mont. 212, 147 P.3d 164. Such agreements are governed by equitable principles based on the unique fiduciary duty children assume upon such transfers. *Hjartarson*, ¶ 25. "A court may rescind a grantor-support agreement on any number of grounds including, but not limited to, failure of consideration, fraud in the transaction, or breach of a condition subsequent." *Hjartarson*, ¶ 25.

¶12 At the close of Russell's case-in-chief, Marie moved for judgment as a matter of law pursuant to M. R. Civ. P. 50, arguing that Russell failed to perform his promise to take care of the loan situation; thus, he was not entitled to the ranch as a matter of law. The District Court denied the motion on the grounds that Russell had presented sufficient evidence to the jury to support his claims for constructive trust. This motion was renewed after the jury rendered its verdict.

¶13 After the presentation of the evidence, Marie offered jury instructions which would have instructed the jury on her theory of a grantor-support agreement regarding the transfer of the ranch. Marie argued that evidence presented at trial concerning Russell's

5

promises in return for the ranch showed that there was a grantor-support agreement and that his failure to perform was an affirmative defense to Russell's claims that he was entitled to the ranch under a constructive trust. The District Court refused to instruct the jury concerning an alleged breach of a grantor-support agreement on the grounds that such instructions would confuse the jury by introducing a contract theory into the case which was not relevant to Russell's claims for constructive trust. The District Court advised Marie that she was completely free to argue the equities of the situation to the jury—including Russell's actions and the ostensible promises he made and failed to perform—in an effort to defeat his claim for a constructive trust, but it declined to introduce contract theories into the case through Marie's proposed instructions.

¶14 Marie now appeals the denial of her proposed jury instructions, as well as the denial of her judgment as a matter of law. We review a district court's jury instructions for an abuse of discretion. *Olson v. Shumaker Trucking and Excavating Contractors, Inc.*, 2008 MT 378, ¶ 22, 347 Mont. 1, 196 P.3d 1265. The test for an abuse of discretion is whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Plath v. Schonrock*, 2003 MT 21, ¶ 13, 314 Mont. 101, 64 P.3d 984. We consider whether the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Dasen*, 2007 MT 87, ¶ 34, 337 Mont. 74, 155 P.3d 1282.

¶15 We review de novo a district court's decision regarding a motion for judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. "Judgment as a matter of law is properly granted only when there is a complete

6

absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from the evidence must be considered in the light most favorable to the party opposing the motion." *Johnson*, ¶ 13.

¶16   Marie has failed to demonstrate that the District Court abused its discretion when it refused jury instructions regarding the grantor-support agreement theory as an affirmative defense to Russell's constructive trust claims.  As Russell points out in his briefs on appeal, his alleged failure to follow through with any obligations regarding the transfer of the ranch would be an equitable consideration that would be "wrapped up," as he puts it, in the jury's consideration of the equities and the circumstances surrounding the constructive trust claim.  If, after hearing all the evidence and arguments of counsel, the jury had concluded that Russell's actions precluded a finding of a constructive trust, then it could have, of course, denied his claim.  As it stands, the jury instructions as a whole fairly and fully instructed the jury on how to weigh the equities involved in the case and come to a decision.  We agree with the District Court that injecting breach of contract claims under Marie's proposed grantor-support agreement defense would have had the potential to confuse the jury; thus, it was not an abuse of discretion for the District Court to deny those instructions.

¶17   Similarly, we conclude that the District Court did not err in denying Marie's motion for judgment as a matter of law.  Simply put, Russell did present sufficient credible evidence to support sending his claim to the jury.

¶18   We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for

7

memorandum opinions.  It is manifest on the record before us that the District Court did not abuse its discretion in refusing Marie's proposed jury instructions and denying her motion for judgment as a matter of law.  Therefore, we affirm.

/S/ PATRICIA COTTER

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE